TEXAS CONSERVATIVE OIL CO. v.
JOLLY.

No. 4035.

Court of Civil Appeals of Texas.   El Paso.
Feb. 27, 1941.

Rehearing Denied March 20, 1941.

266

Neel, King & Rachal, of Corpus Christi, and F. W. Fischer, of Tyler (L. M. Fischer, of Corpus Christi, of counsel), for appellant.

J. Woodrow Hazlewood, and Kemp, Lewright, Dyer, Wilson & Sorrell, all of Corpus Christi, for appellee.

SUTTON, Justice.

This is an appeal from the District Court of Nueces County. The suit is by D. N. Jolly (appellee here, plaintiff below) against Texas Conservative Oil Company (appellant here, defendant below) on an oral contract to establish an alleged interest of 1/32d of the oil as produced and marketed from the 7/8ths working interest in certain leases described in the petition until he had received $75 per acre. The trial was to a jury, and on the verdict judgment was rendered by the court for the plaintiff. The defendant in due time filed its motion for a new trial, and, the same having been overruled, gave notice of appeal and perfected an appeal herein.

The parties will here be designated as in the trial court.

The plaintiff, D. N. Jolly, alleged in his petition upon which he went to trial that he was a petroleum geologist by profession, and that on or about the 13th day of April, 1939, Mr. Louis Titus, president of the Texas Conservative Oil Company, telephoned him at San Antonio, and advised him in the telephone conversation that the Sun Oil Company had offered it (defendant) a "farm-out" arrangement on a lease consisting of 133.18 acres to drill a well; it was offering 7/8ths of the working interest and retaining an overriding 1/8th royalty. Plaintiff alleged Mr. Titus told him in the course of that conversation that the defendant was unwilling to enter into the arrangement and undertake to develop the lease until he .(Jolly) had made a geological examination and approved the lease as a likely oil-producing area. He alleged that on that date he made an investigation of the Sun Oil Company's maps, the data it had on wells drilled in that vicinity, and such other information as he was able to obtain in the Sun Company's office in San Antonio; that he later pursued his inspection and investigation and made a favorable report on the lease to Mr. Titus. He claimed that Titus told him that the Company did not consider it worth while to undertake to develop the lease on so small an acreage; that it would be necessary to acquire additional assistance by dry hole or "bottom hole" commitments, or additional acreage, and also to procure a driller who would be willing to take a chance and accept at least a part of his pay in acreage. He further claimed that he and Mr. Titus agreed then that they would each undertake to procure such assistance and make such arrangements; that he then suggested to Mr. Titus what his (Jolly's) interest should be or his compensation for his services, whereupon Mr. Titus advised him that he would make the same arrangement as was made with him on the Flynn lease. The evidence discloses that Mr. Titus, as president of another operating company, had agreed to pay him and was paying him from the oil as run and marketed .from the Flynn lease 1/32d of the 7/8ths of the oil until he had received $75 per acre. Mr. Jolly claimed and alleged in his petition that Mr. Titus then, as president and representing the defendant Company, agreed with him that he should have for his services in this undertaking 1/32d of the 7/8ths of the oil as produced and marketed from the 133.18-acre lease, less any acreage they might have to give out of it to procure the drilling of a well, and that they would undertake to secure other acreage, and that his interest, that is, 1/32d of the 7/8ths of the oil, would extend to all additional acreage acquired, if any, in connection with this undertaking. He further alleged that they acquired four additional

leases; that they procured Mr. E. A. Graham, a driller, to drill the well on the 133.18-acre tract for 40 acres out of it and $8,310 in cash. He alleged the well was drilled on the 133.18-acre lease and oil discovered in commercial quantities; that after the well came in he requested Mr. Titus to give him an instrument in writing acknowledging his interest; that the defendant failed and refused to comply with the request. He then brought this suit.

The defendant answered with a general exception, special exceptions, general denial, and a special answer, wherein it pleaded the statute of frauds; that three of the four additional tracts were acquired from the Sun Oil Company upon the condition they could not be transferred except with the consent of the Sun.

The question as to whether or not there was any such agreement was one of fact. That question was submitted to the jury and it found the agreement was made as claimed and pleaded by the plaintiff. The defendant Company in its brief apparently concedes that finding to be final, and seeks to avoid it on seven contentions listed in its brief, as follows:

"1. That Louis Titus, as president of appellant corporation, had no authority to bind appellant to the contract as alleged by appellee.

"2. That the contract declared upon by appellee, in so far as it purports to cover after-acquired leases, is unenforceable by reason of the statute of frauds.

"3. That the contract declared upon by appellee, in so far as it purports to cover after-acquired leases, is not of sufficient definiteness and certainty, in its essentials, as is required for equity to enforce specific performance thereof.

"4. That the evidence is not of that clear, satisfactory and convincing character as is required to impress a parol trust on realty.

"5. That there is a fatal variance between the contract alleged and the contract proved.

"6. That the judgment rendered is not supported by the verdict of the jury.

"7. That there is a lack of necessary parties."

In propositions asserted by defendant it takes the position that Louis Titus, as president of the defendant, had no authority to make the contract as claimed and pleaded by the plaintiff, and that he (the plaintiff) having alleged that Titus was duly authorized to make the contract, the burden was on him to prove it, and that the evidence was insufficient to support the finding of the jury on an issue submitted by the court on that question, or to establish it as a matter of law.

■ The authority of the president of a company or any agent may be established by express authority, a course of dealing, or estoppel, arising in various ways, or by admission and adoption. We think any one of these or all of them find support in this record.

At the first meeting of the stockholders of the defendant, held on the 23d day of December, 1938, the following resolution was adopted: "Resolved, that Louis Titus, the president of this corporation, be, and is hereby, authorized and empowered to sell any oil or gas lease or other property belonging to this corporation at such prices and upon such terms and conditions as may be determined by said president, and that any assignment, deed, bill of sale, or other conveyance, when signed by said Louis Titus, as president of this corporation, be the assignment, deed, bill of sale of this corporation."

At this first meeting of the board of directors they adopted by-laws, and in Section 28 thereof this provision is found: "The president shall preside at all meetings * * *; he shall have direct charge and supervision of the business of the corporation."

The evidence in this case shows that Mr. Titus, as president of the Company, made two or more drilling contracts for the drilling of wells on the acreage obtained by it in this project, and paid in part therefor with acreage assigned by him.

In the testimony it is admitted the contract was made with the plaintiff Jolly in so far as it applied to the 133.18-acre tract, and that after the first well came in defendant executed and tendered to Mr. Jolly an assignment covering the 93.18 acres remaining in that lease and the 40-acre Parr lease subsequently acquired; but Mr. Titus, for the defendant, in his testimony denied that he ever made any such contract with the plaintiff applicable to any additional acreage, and that it merely gave him, notwithstanding the agreement had with him, the interest in the 40-acre Parr tract. It has already been noted, however, that the jury found against him on that

issue. The plaintiff alleged a single contract and tied the 133.18-acre tract to all the others. Under the finding of the jury the several tracts stand together or fall together.

■ We think the court may judicially know that the profession of a petroleum geologist is now recognized as a highly specialized one, and that people and concerns interested in the development and production of petroleum avail themselves of the services of geologists, and engage them as they do any other services in the development and production of their properties. The proof in this case shows the defendant recognized the value of the services of the plaintiff and its unwillingness to undertake the "farm-out" proposition offered it by the Sun Oil Company until the lease had been inspected and approved by the plaintiff.

We think the employment was in the ordinary course of defendant's business.

■ Under the express authority given Mr. Titus he had the authority to sell this property and convey it upon such terms as he saw fit. We take it he might have sold the property and paid Jolly with the money. We are unable to see any difference between the sale of it and the payment of the proceeds to Jolly and the agreement to deliver him the ⅓₂d interest in the oil from the ⅞ths working interest until the service is paid for.

■ It is well settled that a corporation, like any other, may not avail itself of the services of another and accept benefits from the services or his property and then defend on the ground that such action was ultra vires, or without authority. Kincheloe Irr. Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S.W. 1187; Reed v. Continental State Bank of Beckville, Tex.Com.App., 2 S.W.2d 426; W. J. Stevens Co. v. Novice State Bank, Tex.Com.App., 2 S.W.2d 419; 10 Tex.Jur. Secs. 260, 312, 331 and 334, and the many cases cited.

■ The other contention that the contract declared upon, in so far as it purports to cover after-acquired leases, is unenforceable by reason of the statutes of frauds is, we think, untenable. As we understand and construe the contract as alleged by plaintiff, it is not one for the sale and purchase of real property; but the effect of it was that the plaintiff and defendant entered upon a joint undertaking, the purpose of which was to acquire in the manner indicated and pleaded oil leases and develop them, and that the same should be owned by them jointly, the plaintiff's interest being ⅓₂d of ⅞ths of the oil produced and marketed, if any, from the premises to the amount of $75 per acre. We think the proposition asserted by the defendant that the contract declared upon in so far as it applies to after-acquired leases is not of sufficient definiteness and certainty in its essentials as is required for equity to enforce specific performance thereof, likewise may not be sustained. The effect of the contract was, as claimed and pleaded by the plaintiff and found by the jury, that it should apply to all the acreage acquired by them in this particular undertaking. The evidence shows that all the additional acreage was a part of this project and, in part at least, depended upon the development of the 133.18-acre tract. The plaintiff testified also that at the time he entered into the contract with Mr. Titus for the Company that the leases acquired were specifically mentioned, and it was agreed that they would undertake to procure them. The evidence also shows that the driller, Graham, was procured largely through the efforts of the plaintiff, and that he procured the Parr tract.

What has already been said, we think, disposes of the fourth contention listed above, and we overrule all of defendant's assignments and propositions asserted in connection therewith.

We are likewise of the opinion the fifth contention is not well taken.

■ In the sixth complaint is made that the judgment rendered is not supported by the verdict of the jury. That, we think, is probably true. The plaintiff sued for and claimed a ⅓₂d of the oil out of the ⅞ths interest to the amount of $75 per acre. The jury found as a fact that was his contract. The judgment establishes the interest of the plaintiff in the gas as well as the oil, but we think, inasmuch as the plaintiff has conceded that in his brief, and has requested this court to reform the judgment in that respect, that the same may be done.

■ In the seventh contention listed above, defendant complains that there is a lack of necessary parties; that is, that the Sun Oil Company and the Wellington Oil Company, having each contributed additional tracts and reserved an interest, are necessary parties. We are unable to agree

to this contention, because the plaintiff asserts no claim or interest in anything these companies reserved. He makes claim only to a 1/32d of the oil produced and marketed from the 6/8ths working interest which the defendant acquired. He does not undertake to disturb the interests of these parties, nor to assert any claim to anything of theirs. Of course, he necessarily takes his interest subject to every right of theirs and of which he had notice.

 Defendant claims also the judgment cannot be sustained because the evidence shows that the acreage contributed by the Wellington Oil Company upon certain conditions was forfeited because of the failure to comply with those conditions. The plaintiff in his brief likewise concedes that contention, and that the Wellington lease was proved to be worthless, and asks this Court to reform the judgment with respect thereto, and we think that may be done.

Defendant further contends that 63 acres out of the Sun 129-acre tract was sold to the Awoeb Oil Company prior to the time the defendant was made a party to the suit, and that therefore the lis pendens notice issued and filed in the suit prior thereto was not binding on the Awoeb Company, and that the judgment is ineffective as to that acreage, and that the Awoeb Company is a necessary party to the suit. This question was not raised in the trial court, except Mr. Titus testified to a sale, but it is not made to appear whether the negotiations were pending or whether they had been completed at the time the defendant was made a party to the suit. He testified that the pendency of the suit and the lis pendens appeared in the abstract, and the Awoeb Company's attorneys raised it, and that he (Titus), for the defendant, guaranteed the Awoeb Company against the claim and recovery, if any, of the plaintiff. It appears, therefore, that it had notice of the suit and of the claim asserted by the plaintiff and took the 63 acres, if it had been conveyed, which does not appear in the record other than as indicated, with notice of it, and upon the defendant's guarantee to protect it against the claim of the plaintiff. We conclude therefore that it was not necessary to stop the trial of the case when that fact developed, as it did, incidentally, and make this concern a party to the suit, and that the judgment is effective as against the 63 acres. At any rate, the Awoeb Company

has raised no question nor made any complaint. It had an opportunity to intervene and assert its rights and claims if any it had, if it deemed it necessary and so desired, but it did not do that.

It follows from what we have said that the judgment should be reformed and affirmed.

It is, therefore, the judgment of this Court that the judgment of the trial court be reformed in such manner as to eliminate the Wellington tract of 86 acres, and that the interest sought to be established in the gas be likewise eliminated, and that the judgment establish the plaintiff's interest in the 1/32d of the 6/8ths of the oil produced and marketed from the acreage remaining not to exceed $75 per acre.

As reformed, the judgment of the trial court is affirmed.