## NEYLAND v. STATE.

### No. 10933.

Court of Civil Appeals of Texas.
San Antonio.

April 2, 1941.

Rehearing Denied May 28, 1941.

R. I. Wilson, of Kerrville, Pierce Stevenson, of Austin, and Johns, McCampbell & Snyder, of Corpus Christi, for appellant.

Gerald C. Mann, Ross Carlton, Ocie Speer, and Richard H. Cocke, all of Austin, for appellee.

NORVELL, Justice.

This is an appeal from a judgment rendered upon an instructed verdict that appellant, O. L. Neyland, take nothing against appellee, the State of Texas.

This action was brought against the State of Texas by Neyland, the plaintiff below, under authority of House Concurrent Resolution No. 122, passed by the 46th Legislature. Neyland was awarded a contract by the State Highway Department for the construction of approximately three miles of roadway in Kerr County, Texas,

and agreed to complete the contract within 120 working days. It is his contention that the State of Texas, through its officers and servants in the State Highway Department, breached this construction contract, thus causing him to suffer substantial damages.

Neyland's complaint is that he was hindered and unreasonably delayed in his work under the contract by the actions of the State's employees, particularly the resident engineer in charge of construction.

Appellant presents three contentions here, namely, (1) that the construction contract by implication provided that the State should furnish a right-of-way free from obstructions, so that construction work could commence immediately after the letting of the contract; (2) that because of the action of the State's employees, particularly the resident engineer, the delay in completing the contract was caused by the State and not the contractor and, therefore, the State was not justified in withholding the sum of $5,475 as liquidated damages for delay in completing the road project; (3) that as the State's employees and engineers had failed to set necessary grade, location and construction stakes as the work progressed, and had failed to endorse changes in the specifications upon the original plans, as provided for in the contract, the trial court had committed error in instructing the verdict against appellant and in favor of the State.

It appears that at the time Neyland commenced work upon the construction contract, the right-of-way was not clear of obstructions so that he could make use of his heavy equipment and machinery. Appellant does not point out any specific provision of the contract which obligates the State to remove all obstructions upon the right-of-way, but asserts that such a provision must be read into the contract as a necessary implication thereof.

Paragraph 2.3 of the contract, under the heading "Instructions to Bidders," reads as follows: "Examination of plans, specifications, special provisions and site of work. Beore filing a bid the bidder shall examine carefully the proposal, plans, specifications, special provisions and the form of contract to be entered into for the work contemplated. He shall examine the site of work and satisfy himself as to the conditions which will be encountered relating to the character, quality and quantity of work to be performed and materials to be

furnished. The filing of a bid by bidder shall be presumptive evidence that he has complied with these requirements."

Paragraph 4.6 of the contract provides that: "All fences, buildings and structures of any character not necessary to the construction of the roadways, or other encumbrances upon or within the limits of the highway, shall be removed by the Contractor and placed on the abutting property or otherwise disposed of as directed. This work shall be paid for as 'Extra Work' unless otherwise stated on the plans or in the special provisions."

On page 18 of the contract, and as a part of the plans and specifications of the proposed highway, appears this notation: "All obstructions within the limits of the right-of-way to be removed by Kerr County unless otherwise noted. All private road approaches and drainage facilities for same to be provided by Kerr County."

We are of the opinion that a provision that the State should furnish a right-of-way clear of obstructions can not be read into the contract by implication. The contract specifically provides that the filing of a bid shall be presumptive evidence that the bidder has carefully examined the plans and specifications as well as the site of the work. Therefore, it is presumed that Neyland knew of the existence of obstructions upon the right-of-way and that the plans and specifications provided that said obstructions should be removed by Kerr County and not by the State of Texas. He is presumed to have had this knowledge when he made his proposal to complete construction of the road called for by the contract, within 120 working days. We therefore hold that the trial court's ruling, excluding testimony with reference to obstructions upon the right-of-way, was correct. We further hold the State was not liable under the contract for the removal of the obstructions, and that the existence of said obstructions did not constitute a legal excuse for the contractor's failure to complete the work within the 120 working days specified in the contract.

We next examine appellant's second contention above pointed out. The contract sued upon contains the following provisions, with reference to the powers and duties of the engineer: "The work will be done under the supervision of the Engineer, to his satisfaction, and in accordance with the contract, plans and specifications. The engineer will decide all questions which may arise as to the quality or acceptability of materials furnished and work performed; the manner of performance and rate of progress of the work; the interpretation of the plans and specifications; and as to the acceptable fulfillment of the contract on the part of the Contractor. His decisions will be final and he will have executive authority to enforce and make effective such decisions and orders as the Contractor fails to carry out promptly."

The contract further provided that: "The Engineer will act as referee in all questions arising under the terms of the contract between the parties thereto and his decisions shall be final and binding."

The contract price for the construction of the road here involved was in excess of $100,000, and the contract specifically provided that under a contract calling for the payment of a consideration in excess of the sum mentioned, there should be deducted from the money due to the contractor, not as a penalty, but as liquidated damages, the sum of $75 for each additional day over 120 working days taken for the completion of the contract. It will be seen that the assessment of liquidated damages against the contractor for failure to complete the contract within the time specified is a matter to be decided by the engineer in accordance with the provisions of the contract.

■■ This Court recently had before it the question of the position and authority of an engineer under contract provisions approximating those contained in the contract involved here. City of San Antonio v. McKenzie Construction Company, Tex. Civ.App., 138 S.W.2d 568. In affirming the judgment of this Court in the McKenzie case, the Supreme Court, speaking through Mr. Justice Critz, held that the decision of an engineer or architect made under authority of contract provision was in many respects similar to a judgment of a court of last resort, in that "all reasonable presumptions are indulged in favor of the award, and none against it." It was also said that "When parties to a building contract agree to submit questions which may arise thereunder to the decision of the engineer, his decision is final and conclusive; unless in making it he is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment." City of San Antonio v. McKenzie Construction Co., Tex.Sup., 150 S.W.2d 989.

Applying the rules stated by the Supreme Court to the record presented here, we are of the opinion that appellant in his brief has failed to show that there was a jury issue presented in connection with the retention by the State of $5,475 as and for liquidated damages.

■■ Under the proposition attacking the retention of this sum, because of appellant's failure to complete his contract within the specified time, we are referred to the testimony of the witness Ben Mueller, which occupies 281 pages of the statement of facts. We are not required to notice mere references to the statement of facts where no attempt is made to set out the substance of the testimony referred to. We have however read this testimony and it appears therefrom that he, Mueller, was for a time employed as appellant's superintendent. He testified as to numerous disputes which arose between the contractor and the resident engineer. It also appears that the engineer made a number of changes and alterations in the plans and specifications under the terms of the contract, which expressly provided that the engineer had the right to make such changes and alterations in the plans as he considered necessary or desirable.

It also appears that upon at least two occasions, the trial court sustained objections to Mr. Mueller's testifying as to proper engineering practices. Appellant does not show what Mr. Mueller's testimony would have been in this regard had he been permitted to testify. In fact, it appears to have been conceded in the trial court that Mueller was not qualified to testify as an expert engineer so as to state his opinion concerning engineering practices and principles relating to highway construction. Appellant has not directed this Court's attention to any other testimony in the record tending to show that the various decisions made by the resident engineer during the progress of the work were not in accordance with applicable and well-founded engineering practices, but, on the contrary, were fraudulent and the result of a failure to exercise an honest judgment.

The final decision of the engineer as to the retention of a certain sum as and for liquidated damages is, of course, based upon numerous decisions made by the engineer during the progress of the work. The rules above set out apply to these numerous preliminary decisions. All reasonable presumptions are indulged in their favor. We are of the opinion that the testimony to which the attention of this Court has been directed is insufficient to support findings that the engineer's decision upon the issue of the retention of liquidated damages, as well as his decisions preliminary thereto, was the result of fraud, misconduct or bad faith.

■ We next consider appellant's contention that the trial court erred in giving the peremptory instruction, for the reason that there was sufficient evidence to go to the jury under the theory that the State had breached the construction contract, in that its employees had failed to indorse changes in specifications upon the original plans and failed to set necessary construction stakes.

Under the propositions raising this contention, we are again referred to the testimony of the witness Ben Mueller. We are of the opinion that the testimony of this witness is insufficient to show a cause of action against the State because of a failure to indorse changes in specifications upon the original plans.

The construction contract provides that "the engineer will furnish and set construction stakes establishing lines and grades in roadway work, and center lines and benchmarks for bridge work, and will furnish the Contractor with all necessary information relating to lines and grades. These stakes will be set sufficiently in advance of the work to avoid delay."

An examination of that part of the statement of facts designated by appellant with reference to this particular complaint discloses that said stakes were not set when requested by the contractor for the reason that the engineer was of the opinion that certain other parts of the roadway should be first constructed or finished before work was commenced upon that portion for which stakes had been requested. As above pointed out, the contract specifically provides that "the manner of performance and rate of progress of the work" shall be decided by the engineer and that his decision is final. We are of the opinion that the testimony to which reference is made by the appellant is insufficient to show that the engineer in passing upon the manner of the performance of the contract was "guilty of fraud, misconduct or such gross mistake as would imply bad faith or failure to exercise an honest judgment." City of San Antonio v. McKenzie Construction Company, supra.

The above holdings dispose of this case. It is not necessary for us to discuss the supplemental agreement between the State and appellant, dated June 15, 1937, whereby appellant waived all claims for delays, damages or costs which arose prior to the date thereof, nor appellant's contention that said agreement was executed by him while subject to duress on the part of the State.

■ With the exception of the contention that the State was liable for the removal of obstructions upon the right-of-way, or for the delay incident to such removal, all other contentions presented here are predicated upon the testimony of the witness Mueller who did not enter the employment of the appellant until after June 15, 1937. We have overruled the contention concerning obstructions on the right-of-way and held that the testimony of Mueller, to which our attention was directed by appellant, is insufficient to support a cause of action under the various theories advanced by said appellant. It is well settled that in the absence of an error apparent of record, a judgment based upon an instructed verdict will not be reversed by an appellate court, unless the appellant in his brief demonstrates that there is sufficient evidence to support fact findings in accordance with a pleaded theory of recovery or cause of action.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

We have again carefully considered the record in this case in the light of appellant's motion for rehearing. Appellant among others raises the following contentions:

First: Appellant asserts that the evidence is sufficient to support findings that the decisions of the resident engineer, particularly with reference to the matter of liquidated damages, were the result of "fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment."

Mark Mosty, one of appellant's witnesses, testified that the resident engineer stated that it was his intention to break Mr. Neyland, the appellant, if it was the last thing he ever did. The testimony of this witness and that of Ben Mueller, if believed, indicates that the resident engineer harbored a feeling of ill will or malice toward appellant.

■ Once it is prima facie established that a decision of the engineer under a contract like the one here involved is erroneous or wrong, testimony tending to show express malice on the part of the engineer toward the contractor would be admissible as being upon the question of whether or not a decision made by the engineer was fraudulent or the result of bad faith. Incorrectness of decision can not, however, be inferred from the existence of bad feeling or ill will between the engineer and the contractor.

■ As pointed out in the original opinion, we are unable to determine from the record whether the numerous decisions made by the engineer were erroneous or not. For instance, it appears that the resident engineer expressed the opinion that in many details the original plans and specifications were unsuited for the particular roadway covered by the construction contract. For this expressed reason, the engineer made numerous changes in the plans and specifications as he was authorized to do under the contract. In the absence of evidence as to correct engineering practices applicable to the construction of highways over the same or similar terrains as that involved here, we are wholly unable to determine whether or not these changes made by the engineer were correct or justified. We can not conclude from the fact that numerous changes in plans were made that such variations were unwarranted and the result of caprice or ill will on the part of the engineer. The decisions involved in these changes must be shown to be wrong and incorrect by competent evidence.

■ Appellant asserts that while this case was in the progress of trial in the lower court, the District Judge "in writing advised counsel for appellant that he might proceed to develop his case, but that when he rested he might expect a directed verdict against the appellant." It is then suggested that for this reason the holding hereinabove stated may not be properly applicable to the matters here discussed. Appellant cites no authorities, and we have been unable to find any, which support the suggestion made. We do not believe that the statement attributed to the trial court by appellant would authorize us to indulge the presumption that the decisions of the engineer were incorrect in the absence of evidence to that effect.

Second: Appellant asserts that the evidence shows that the resident engineer

failed to endorse upon the original plans the changes and alterations made by him; that damages were sustained by appellant as a result of the failure, and therefore the case should have gone to the jury upon this theory of recovery.

We are unable to agree with appellant's contention. The contract provided that "authorized alterations will be endorsed on approved plans or shown on supplementary sheets." The witness Ben Mueller testified that the resident engineer "was handing me slips of paper with the differences in the crown and widths and slips varying from the plans, and I asked him to put the changes on the plans so I would then have the plan to work by, and he started putting them down, he made two changes, and said: no, I am not going to, I might want to change that—you are trying to get me to stick my neck out; we still have the changes he made."

According to Mueller, the engineer promised to furnish certain drawings for his guidance in construction work but failed to do so. It does however appear that the construction work progressed and was performed in accordance with changes made orally or in the plans and specifications by means of oral or written instructions of the engineer. This variation of method from that prescribed in the contract is regarded by us as a deviation from the contract rather than an abrogation thereof. The rule, therefore, applicable to this situation is that "while deviations from contract do not necessarily cause a failure of performance or an abrogation, they may entitle the parties to extra compensation or damages." 17 C.J.S. 1092, Contracts, § 510. It is also well settled that actual damages can not be recovered unless the evidence shows "the extent or amount of the party's loss, injury or prejudice." 13 Tex. Jur. 360, § 205.

Mueller's testimony indicates that delays in the progress of the work were caused by the engineer's refusal to endorse his changes upon the plans and specifications, but appellant points out no evidence which would afford a basis for a jury's estimate as to the monetary loss or damages sustained thereby. Appellant seemingly takes the position that the trial court erred in giving the peremptory instruction, even though the record discloses "no satisfactory way of determining the amount of damage." We have some doubt as to whether or not a cause of action is made out based upon a deviation from a contract as distinguished from a breach thereof, in the absence of proof of actual damages. However that may be, the contract here involved differs from the type usually encountered, in that it provides for an arbiter or referee. Claim for additional time, extra compensation or damages occasioned by changes in plans or failure to make such changes as provided for in the agreement, are matters arising "under the terms of the contract between the parties thereto." It appears that an award of damages was made by the engineer, the referee under the contract, against the contractor and in favor of the State. It also appears that in fixing the amount of the award certain allowances were made in favor of the contractor. This is apparent from the fact that nearly one year (and a year is generally considered as containing 300 working days) was required by the contractor for the construction of the road covered by the contract. He was allowed 120 days for such construction by the contract, and the award of $5,475 is necessarily based upon a holding that the contractor was only liable for an excess of 73 days. In order to reduce the amount of the award made in favor of the state, avoid it entirely, or replace it with an award against the State and in favor of the appellant, it was, among other things, incumbent upon appellant to show that the time allowance made by the engineer was incorrect, or that appellant had suffered a pecuniary damage by reason of the action of the State or its employees which had not been allowed by the engineer in a correct and sufficient amount. This obviously can not be done unless some basis or measure of damage is shown by the evidence.

After a consideration of all grounds for rehearing set forth in appellant's motion, we are of the opinion that our original disposition of this case was correct, and the motion for rehearing is accordingly overruled.