### KIRKLAND v. HANDRICK.

No. 11324.

Court of Civil Appeals of Texas.

San Antonio.

July 21, 1943.

Rehearing Denied Sept. 1, 1943.

736

Temple Calhoun, Conger & Baskin, and M. A. Childers, all of San Antonio, for appellant.

McClanahan & Loughridge and Clarence R. Boatwright, all of San Antonio, for appellee.

NORVELL, Justice.

This is a suit instituted by Bertha Kirkland against her brother H. A. Handrick, seeking to recover Lot No. 30, Block No. 14, in New City Block No. 6704 of the City of San Antonio, Texas. Handrick holds the record title thereto. Mrs. Kirkland claims ownership by virtue of being the beneficiary under a trust which she seeks to engraft upon a deed executed by Frank Wolff, trustee, to Handrick.

After a trial to a jury, the trial court entered judgment for Handrick and Mrs. Kirkland has appealed.

It appears that on August 14, 1936, Mrs. Kirkland, then an unmarried woman, purchased the property in question for a consideration of $6,400. In this transaction she paid some cash, conveyed some property owned by her, and executed a deed of trust securing W. K. Ewing, Inc., in the payment of a $4,500 note due in monthly installments.

In May, 1938, Bertha Kirkland married one Frank W. Estes. This marriage was not a happy one and by 1940 the parties were contemplating separation and divorce.

Mrs. Kirkland who will be thus referred to throughout the opinion, was a teacher in the San Antonio public schools and from her personal earnings in that capacity paid the monthly installments due, until about September, 1940. The Ewing Company was informed by her attorney that she would make no more payments and a trustee's foreclosure sale resulted. Mrs. Kirkland made arrangements with the Frost National Bank to secure the money necessary to purchase the property at the trustee's sale. However, as she was then a married woman contemplating the securing of a divorce from her husband, it was agreed that her brother, H. A. Handrick, should sign the note to the Frost Bank and that the trustee's deed should be made out in his name. Mrs. Kirkland's attorney bid the property in at the trustee's sale and directed that the deed be made to Handrick. After this sale and up to the time of the filing of this suit, Mrs. Kirkland paid all the installments due upon the note to the Frost Bank as well as the taxes upon the property.

In May, 1942, appellant secured a divorce from Estes and her former name, Mrs. Kirkland, was restored to her. The decree made no disposition of the community property of the parties.

Shortly after receiving her divorce, Mrs. Kirkland made arrangements with the Frost Bank to release her brother upon the note which he had executed, and requested of her brother a conveyance of the legal title to the lot. This he refused to do and contended upon the trial, that he purchased the property at the trustee's sale free of all claims of his sister.

The jury found, however, that Mrs. Kirkland and Handrick, in August or September, 1940, "formulated a plan under the terms of which it was verbally agreed between them that plaintiff (Mrs. Kirkland) permit the payments on the property to become delinquent and arrange for a foreclosure sale of same, and defendant (Handrick) would purchase the property at said sale and hold the same for the use and benefit of plaintiff until such time as she relieved him of his obligation on the indebtedness against the property which he had become liable for by reason of the execution of the note thereon."

The jury found that "one of the purposes or objectives for such alleged oral agreement, if any, was to extinguish the community interest of plaintiff's then husband, Frank W. Estes, in the property."

■ We are of the opinion that the circumstances disclosed by the undisputed evidence and the jury's first finding are such that a court of equity will raise a constructive trust in favor of Mrs. Kirkland. In Ruling Case Law it is said: "It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. * * *" 26 R.C.L. 1236.

In speaking specifically of a purchase at a judicial sale by one for the benefit of another, the same authority also states: "* * * But while a mere verbal agreement to purchase for another at a judicial sale creates no implied trust, if a confidential relation exists between the parties or if other circumstances exist which make it inequitable that the purchaser should retain the title for himself, a trust will be implied. * * * Likewise a constructive trust has been held to have arisen where the promisor and promisee in the oral agreement sustained a close confidential relation with each other, such as parent and child, attorney and client, mother-in-law and son-in-law, or cotenants." 26 R. C.L. 1245, 1246.

■ The jury's second finding above mentioned does not preclude Mrs. Kirkland from obtaining equitable relief. The interest of Frank W. Estes in the property amounts to about $250, which accrued to him because of the fact that his wife's earnings were community funds. Mrs. Kirkland is not, however, in any way indebted to Estes, and was not at the time she entered into the arrangement with her brother above mentioned. Estes' community interest, in so far as the record here shows, is still outstanding and has not become "extinguished." We believe that Rivera v. White, 94 Tex. 538, 63 S.W. 125, is in point and controlling here.

■ Further, as stated in Corpus Juris Secundum: "The clean hands maxim has its limitations. It does not operate so as to repel all sinners from a court of equity, nor does it apply to every unconscientious act of a party. * * * equity will consider the conduct of the adversary, the requirements of public policy, and the relation of the misconduct to the subject matter of the suit and to defendant. * * *" 30 C.J.S., Equity, § 98 pp. 487, 488.

There is error in the trial court's judgment, but as the Frost National Bank is not a party to this suit, we can not here render a judgment releasing Handrick from his liability upon the note held by the bank, although the testimony of the trust officer of the bank indicates a willingness to release Handrick from liability and accept Mrs. Kirkland's responsibility for the payment of said note in lieu thereof.

It is further deemed inadvisable to here render a judgment conditioned upon the release of Handrick by the bank. Because of these considerations, the cause will be remanded to the trial court.

The judgment appealed from is reversed and the cause remanded.