WILMON W. WARE, PROSECUTOR, v. THE BOARD OF COMMISSIONERS OF THE CITY OF CAPE MAY, DEFENDANT.

Argued October 5, 1937—Decided March 15, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Lewis T. Stevens.*

For the defendant, *Samuel F. Eldredge* (*William Elmer Brown, Jr.,* of counsel).

The opinion of the court was delivered by

HEHER, J. On April 6th, 1937, the city of Cape May, governed since January 1st, 1925, under the Municipal Manager act of 1923 (*Pamph. L., p.* 217), as amended, discarded that system and adopted the provisions of the Commission Government act of 1911. *Pamph. L., p.* 462, as amended. A board of commissioners, elected pursuant thereto on May 11th, 1937, assumed office on the ensuing May 18th.

On April 12th, 1937, the city council, at a regular meeting, adopted a motion that prosecutor "be employed in the fire department beginning April 16th, at a salary of $115 per month," to succeed one Hebenthal, a driver of department apparatus, lately retired on pension. On the same day the city manager, by letter, directed prosecutor to "report for work" at a designated fire house, and advised him that he would be paid at the stated rate. It is conceded that the manager despatched this communication "pursuant to a motion of city council;" in fact, the manager, called as a witness by prosecutor, so testified. Prosecutor performed the duties thus assigned to him until May 24th, 1937, when he was "discharged" pursuant to a resolution adopted by the newly elected board of commissioners. By a companion resolution, the board appointed one Taylor in his place.

Asserting that he was legally appointed by the city council, and that his discharge by the board of commissioners therefore contravened the provisions of sections 3 and 5 of article XVII of the "Home Rule act" of 1917, as amended, respec-

tively, by chapters 244 and 203 of the laws of 1935 (*Pamph. L.* 1917, *pp.* 319, 363; *Pamph. L.* 1935, *p.* 755), prosecutor brought the proceedings into this court by *certiorari*.

The point is not well made. His appointment was tainted with illegality. The Municipal Manager act, *supra,* vested the power of appointment in the city manager. The council had no authority in the premises.

Section 701 of article VII of that enactment provides that the municipal council "shall be the governing body of the municipality" adopting that system "and, except as otherwise provided" therein, "shall have and possess all administrative, judicial and legislative powers and duties" then "had and possessed and exercised by the governing body of such municipality, and all other executive or legislative bodies, in such municipality and shall have complete control and supervision over the affairs of the municipality * * *, to be exercised in the manner" therein prescribed. Section 703 of article VII empowers the council to "appoint a municipal manager, an assessor, or where now required by a law a board of assessors, a municipal auditor, a municipal treasurer, a municipal clerk and a municipal attorney," and "such subordinates and assistant of such appointees, other than those of the municipal manager, as may be necessary and shall fix their salaries and duties."

By section 200 of article II and section 804 (a) of article VIII, the municipal manager is constituted "the chief executive and administrative officer" of the municipality. Section 804 (d) of article VIII vests in the manager authority to "appoint and remove all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided" in the act, and to "supervise and control his appointees;" and he is therein directed to "report all appointments or removals at the next meeting thereafter of the municipal council." See, also, section 806 of article VIII. The statute provides "no other method" for the selection of municipal servants of prosecutors' class, and the power of appointment was therefore the sole office of the manager.

Councilmanic interference with the exclusive functions of the city manager is violative of the very essence of this statutory system of government. The basic policy is expressed in terms that admit of no doubt as to the legislative purpose. All municipal servants shall be selected "with reference to their qualifications and fitness for the public service required of them and without reference to their political faith or affiliations." Section 901, article IX. The legislature has, with certain exceptions, entrusted the administration of this policy to the manager. That is one of the outstanding features of this modern scheme of local government. See, also, section 708, article VII.

We express no opinion as to whether, in the circumstances here presented, *certiorari* was an appropriate remedy.

The writ is accordingly dismissed, but without costs.