80 N.J. Super. 494 (1963)
194 A.2d 248
JAMES M. VISONE AND MARIE VISONE, PLAINTIFFS-APPELLANTS,
v.
HAROLD V. REILLY, CITY MANAGER OF THE CITY OF HACKENSACK, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1963.
Decided October 4, 1963.
*495 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Irving C. Evers argued the cause for appellants.
Mr. George A. Brown argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The sole issue on this appeal is whether an appointment made by a city manager pursuant to the authority vested in him by R.S. 40:82-4(d) requires the approval of the governing body in a municipality operating under the municipal manager form of government, L. 1923, c. 113; R.S. 40:79-1 et seq., as amended.
The City of Hackensack operates under the Municipal Manager Act. Plaintiffs, citizens and taxpayers of the city, *496 instituted a proceeding in lieu of prerogative writs in the Superior Court, Law Division, Bergen County, challenging the validity of defendant City Manager Reilly's appointment of one Conforti to a vacancy in the office of deputy chief of police. They contended that the appointment was invalid because not approved by the municipal council, such approval being necessary under R.S. 40:82-4. An answer was filed on behalf of the city manager as well as the city council in which defendants, by way of separate defenses, alleged that (1) the appointment had been made in accordance with the statute, R.S. 40:82-4(d), and paragraph (b) of section V of ordinance No. 654 governing the police department of Hackensack; and (2) Conforti had been validly appointed and lawfully held the office of deputy chief. Plaintiffs then gave notice of motion for summary judgment based upon the pleadings and a stipulation of facts attached to the notice. Among the facts stipulated was that the city manager had appointed Conforti to a vacancy in the office of deputy chief on October 10, 1962, had reported the appointment to a meeting of the city council held November 5, 1962, and that the city council had taken no confirmatory or formal action with respect to the appointment. The Law Division judge denied the motion, holding that the appointment need not be confirmed by the city council.
Defendants thereafter moved for summary judgment on the pleadings. The motion was granted, the trial judge again holding that Conforti's appointment need not be confirmed by the city council, and that the complaint did not set forth a cause of action upon which relief could be granted.
R.S. 40:82-4 deals with the duties and powers of a municipal manager. Subsection (d) provides that the municipal manager shall
"Appoint and remove all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this subtitle [R.S. 40:79-1 et seq.], supervise and control his appointees, and report all appointments or removals at the next meeting thereafter of the municipal council."
*497 The final paragraph of R.S. 40:82-4 reads:
"The municipal manager shall in all matters act under the direction and supervision and subject to the approval of the municipal council."
Ordinance No. 654 governing the Hackensack Police Department provides, in section V, paragraph (b):
"Appointments to the Department, the filling of vacancies and promotions shall be made by the City Manager in accordance with the rules and regulations of the State of New Jersey, Department of Civil Service, and as otherwise prescribed by the Statutes of the State of New Jersey with respect thereto, and ordinances pursuant thereto * * *."
Plaintiffs do not contend that the office of deputy chief of police is not to be filled by appointment of the municipal manager. Recognizing that he has such power, they argue that the appointment must be confirmed by the city council, reliance being placed on the final paragraph of R.S. 40:82-4, quoted above.
Under the municipal manager form, the municipal council is the governing body of the municipality. R.S. 40:81-9. It "shall continue or create, and determine and define the powers of [the several] executive and administrative departments, boards and offices * * * as it may deem necessary for the proper and efficient conduct of the affairs of the municipality by law." R.S. 40:81-10. The only power it has over appointments is that set out in R.S. 40:81-11, as amended, which provides that the municipal council "shall appoint a municipal manager, an assessor, or where required by law a board of assessors, an auditor, a treasurer, a clerk, and an attorney." Such appointees hold office during the pleasure of the council. The municipal council may appoint advisory boards with power to make investigations and recommendations. R.S. 40:81-13. It also appoints the municipal magistrate. N.J.S. 2A:8-5. It has no other appointment powers than those expressly conferred by statute.
*498 The municipal manager is the chief executive and administrative officer of the municipality. R.S. 40:82-4(a). The Legislature has conferred plenary powers upon him so that he may effectively and efficiently discharge the duties of his office. R.S. 40:82-4. It has protected the manager from council interference by expressly providing in R.S. 40:81-16 that
"It is the intention of this subtitle that the municipal council shall act in all matters as a body, and it is against the spirit of this subtitle for any of its members to seek to influence the official acts of the municipal manager, or any other officer, or to interfere in any way with the performance by such officers of their duties. * * *"
In conferring broad powers of appointment upon the municipal manager under R.S. 40:82-4(d) the Legislature did not require that his appointments be confirmed by the municipal council. The manager's only responsibility is to report appointments or removals. Basic to the municipal manager form of government is that the council shall be the policy-making body, and the manager the chief administrator. The council does not and should not attempt to dictate or confirm appointments, nor importune the manager on appointments, or indeed on any other administrative matter. See Ridley and Nolting, The City Manager Profession, page 30 (1934). Had the Legislature desired to depart from this basic principle of municipal manager government, it could have so provided in R.S. 40:82-4(d) by requiring council approval of appointments. See, for example, the provision in the very next subsection, R.S. 40:82-4(e), where, in contrast to subsection (d), the Legislature has specifically provided that the manager's negotiation of contracts is subject to the approval of the municipal council.
It should also be noted that subsection (d) is not limited to appointments only, for it also speaks of the removal of appointees and their supervision and control. Thus, the municipal manager is given complete charge of personnel *499 administration under the municipal manager form of government. If council approval were required in the case of an appointment, then with equal logic the council would have to approve any removal as well as the manager's supervision and control of every employee. This would completely destroy the form of government; administration would stagnate and become practically inoperative.
Although there is no case expressly holding that an appointment by the municipal manager requires council confirmation, the tenor of our cases construing R.S. 40:82-4(d) is entirely clear: appointments are the exclusive domain of the municipal manager.
In Ware v. Cape May, 120 N.J.L. 48 (Sup. Ct. 1938), the city council adopted a motion that Ware be employed in the fire department. The city manager by letter directed him to report for work, and it was conceded that this communication was pursuant to the action taken by the city council. Shortly thereafter the newly elected governing body adopted a resolution discharging Ware and appointed another in his place. Ware brought certiorari, contending that he was legally appointed by the city council and his discharge was illegal. Justice Heher, writing for the court, held that Ware's appointment was tainted with illegality: under the Municipal Manager Act the power of appointment was vested in the city manager, and the council had no authority in the premises. After reviewing pertinent sections of the act, he said:
"Councilmanic interference with the exclusive functions of the city manager is violative of the very essence of this statutory system of government. The basic policy is expressed in terms that admit of no doubt as to the legislative purpose. All municipal servants shall be selected `with reference to their qualifications and fitness for the public service required of them and without reference to their political faith or affiliations.' * * * The legislature has, with certain exceptions entrusted the administration of this policy to the manager. That is one of the outstanding features of this modern scheme of local government." (120 N.J.L., at page 51)
*500 In affirming, the Court of Errors and Appeals said, in part:
"It is argued that section 805 [R.S. 40:82-4] provides that the municipal manager shall in all matters act under the direction and supervision and subject to the approval of the municipal council;' and that this confers upon the council a supervisory control over appointments, although it is expressly conceded that no other method of appointment is authorized by the act, than by the manager under section 804(d) [R.S. 40:82-4(d)]. But we agree with the Supreme Court that this general language of section 805 should not be read as affecting the specific power of appointment contained in section 804(d), and that independent appointment by the manager is of the essence of the legislative scheme." (121 N.J.L., at page 545)
Our highest court has only recently pointed out that our cases have been strict in protecting the appointment authority of the manager, both under the original 1923 Municipal Manager Act and the Faulkner Act, N.J.S.A. 40:69A-1 et seq., specifically N.J.S.A. 40:69A-95. Clifton v. Zweir, 36 N.J. 309, 324 (1962).
We are not impressed with plaintiffs' argument that the Law Division's determination makes the final paragraph of R.S. 40:82-4  that the manager shall in all matters act under the direction and supervision and subject to the approval of the council  surplusage. There can be no question but that the municipal council is the policy-making body of the municipality. R.S. 40:81-9. All activities of the manager are ultimately circumscribed by municipal policy. Thus, his appointments to the police department are clearly controlled by the policy set out in ordinance No. 654, section V, paragraph (b), quoted above. In execution of its policy-making authority, the council may create any office or position by ordinance  for example, the office of deputy chief of police. But it does not follow that such office, once created, may only be filled with the approval of the governing body. If such confirmation were required, then the council would also have the power to reject the manager's appointees. What would then become of the manager's "independent appointment" power, deemed to be "of the essence of the legislative *501 scheme?" Ware v. Cape May, above, 121 N.J.L., at page 545.
In our opinion, the last paragraph of R.S. 40:82-4 bespeaks the ultimate power of disapproval reposing in the council, namely the power to remove the manager for cause, R.S. 40:82-3. It does not diminish the manager's power of appointment under R.S. 40:82-4(d) by requiring council approval. Nor would it support any disapproval of a municipal manager appointment.
We therefore hold that council approval or disapproval of an appointment made by the manager under R.S. 40:82-4 is not required and, in fact, would be out of order. It may be noted, however, that the Hackensack City Council has indicated its approval of Conforti's appointment, though not in a formal way. It has not expressed formal disapproval, or objected to payment of Conforti's salary as a deputy chief of police. Indeed, it authorized the city attorney, its own appointee, to appear in the Law Division and before us to resist any attack upon the city manager's appointment.
Affirmed.