MARY A. STEPHENSON ET AL. v. EUGENIA W. CHAPPELL ET AL.

No. 872.

**1. Practice on Appeal—Appearance by Counsel—Waiver of Service of Citation in Error.**

Where counsel for defendants in error, by written endorsement on the brief filed by plaintiffs in error, waive the filing of such briefs in the trial court, this is an appearance in the appellate court such as precludes defendants in error from insisting on a motion to dismiss the appeal because the citation in error had not been served upon some of them prior to the return day thereof.

**2. Community Estate—Authority of Guardian.**

A guardian of minors has not the authority, without an order of court, to release to the survivor of a community estate, consisting of realty and personalty, the interest which his wards have therein as heirs.

**3. Same—Presumption—Deed to Either Spouse.**

Property conveyed by deed to either spouse during marriage is presumed to be community property, and the rule is not changed by the fact that the parties had recently removed to Texas when the deed was made.

**4. Same—Value Estimated at What Date.**

Where heirs sue to recover their interest in community personal property which has been withheld they are entitled to recover on the basis of its value at the time of trial.

**5. Same—Improvements and Taxes.**

In an action by heirs to recover their interests in community property which has been withheld by the father as survivor in community, the defendants were not entitled to credit for improvements and taxes during the time it was withheld, where it appeared that payment for these was made with community funds.

**6. Special Verdict—Issue Omitted.**

Where a special verdict fails to find all the facts put in issue by the pleading, it is insufficient, although the evidence shows the existence of the facts not found beyond controversy.

**7. Evidence—Immaterial Objection.**

An objection that the testimony of a guardian showed that she had received different amounts on claims due her ward from those shown by her receipts, should not be sustained, where it appears that the amounts shown by the receipts were taken as correct.

**8. Practice on Appeal—Costs of Transcript—Superfluous Matter.**

Where the transcript on appeal embraces a large amount of superfluous matter, the costs thereof will, upon motion, be taxed against the appellant.

APPEAL from Dallas.   Tried below before Hon. EDWARD GRAY.

*George H. Plowman* and *Joseph M. Cary*, for appellants.--1. The lawful guardian being by statute entitled to the possession of all property of, and to collect all claims due to, the wards, and it being her duty to use diligence to recover wards' property or claims, and being empowered to receive property in payment of any debt due the wards, the receipt by the guardian of the wards' interest in such community and in Wm. H. Armstrong's estate is valid.   Rev. Stat., arts. 2170, 2171, 2183, 2542, 2545, 2547;   Fretilliere v. Hines, 57 Texas, 392;   Huppman v. Schmidt, 65 Texas, 586-7; · Leatherwood v. Arnold, 66 Texas, 417;   Randolph v. Junker, 1 Texas Civ. App., 517;   Genet v. Tallmadge, 1 Johns. Chan.,

1-3; Morrill v. Dickey, Id., 66; Mason v. Buchanan, 62 Ala., 110; Jones v. Jones, 20 Iowa, 388.

2. The amount of advancements received by defendants in error from Samuel Armstrong should be estimated in value on the basis of the estimate and value of the estates at the time the advancements were made and received, and not on the value on the day of the trial. Rev. Stat., art. 1651; Monroe v. Leigh, 15 Texas, 520; Maxwell v. Guyton, 20 Texas, 202; Scoby v. Sweat, 28 Texas, 386, 713; Halliday v. White, 33 Texas, 448, 460; Collins v. Box, 40 Texas, 191; Sparks v. Spence, 40 Texas, 694; Harris v. Reed, 47 Texas, 523; Connor v. Huff, 48 Texas, 364; Belcher v. Fox, 60 Texas, 531.

3. Plaintiff in error, Mrs. Stephenson, being called to testify by the defendants in error, could state any matter connected with the cause and pertinent to the issue to be tried. Rev. Stat., arts. 2240, 2242, 2248; Bradley v. Bradley, 13 Texas, 263; Graham v. Stephens, 15 Texas, 88; McCorkle v. Lawrence, 21 Texas, 731; · Foster v. Spear, 22 Texas, 226.

4. The statements of Samuel and Eliza Armstrong to Jas. O. Adams showing the trust agreement in reference to the lands, being part of the res gestae, and admissions against their interests, should have been admitted in evidence in support of this defense of plaintiffs in error. 1 Rice on Evidence, par. 212 o, 221 a; Massey v. Massey, 20 Texas, 138; McGowen v. McGowen, 52 Texas, 657; Pilkington v. Railway, 70 Texas, 227-231.

5. The lands having been acquired by Samuel Armstrong within a few months after he came to Texas on a visit and prior to his removal here, no presumption would arise that said lands belonged to the community estate, but the contrary presumption would arise and the burden was on defendants in error to show that said lands were a part of the community estate of Samuel and Eliza Armstrong. Rev. Stat., art. 2852; Medlinka v. Downing, 39 Texas, 32; Duke v. Reid, 64 Texas, 715; Watts v. Miller, 76 Texas, 13; McDougal v. Bradford, 80 Texas, 558.

6. By the terms of the statute the survivor when required to account, is entitled to a deduction for all "community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission for the management of the community estate." Clift v. Clift, 72 Texas, 149; Thompson v. Jones, 77 Texas, 629; Robinson v. Moore, 1 Texas Civ. App., 93.

*Leake, Henry, Reeves & Greer* and *Word & Charlton,* for defendants in error.—1. The statute does not give the survivor who has qualified as such the right to take all the community estate at the valuation placed thereon by the appraisers.

2. The guardian of defendants in error could not extinguish their right and title to the lands sued for by any act or contract of herself, independent of the Probate Court. Stephens v. Shaw, 68 Texas, 283.

3. Property acquired during marriage, by either spouse, is presumed to be community.

4. The survivor is not entitled to be credited with the value of improvements, unless he complies with the provisions of the statute, and keeps the account therein provided.

### ON MOTION TO DISMISS.

FLY, ASSOCIATE JUSTICE.—Defendants in error have filed a motion to dismiss this cause for the reason that the citation in error was served on some of the defendants in error after the return day of the citation. The transcript in this case was filed in the Court of Civil Appeals at Dallas on April 20, 1895, and three days afterwards the following endorsement was made on the back of one of the briefs of plaintiffs in error, "Having received from plaintiffs in error copies of the within brief we hereby waive filing of same in the trial court." This agreement was signed by counsel who designated themselves, "Attys. for defts. in error." We conclude that the agreement was an appearance in the Appellate Court as to all of the defendants in error. The attorneys who represented the defendants in error in the trial court, and who represent them in the motion to dismiss, are those who signed the agreement, and it will be presumed that they were authorized to represent them in the Appellate Court on the writ of error. The motion to dismiss will be overruled.

*Overruled.*

Delivered January 15, 1896.

### ON THE MERITS.

FLY, ASSOCIATE JUSTICE.—In 1891, the suit, from which this appeal resulted, was brought by Mrs. Ella V. Thruston as guardian of the estates of Eugenia W. Chappell and William A. Chappell, her minor children by a former marriage. The statement of the matters pleaded, made by appellees, is correct and we adopt it as follows:

"In 1877, Elizabeth A. H. Armstrong (grandmother of defendant in error) died intestate, leaving surviving her her husband, Samuel Armstrong, and three children, her only heirs, viz.: Mary A. Stephenson, plaintiff in error (defendant in lower court), Wm. Armstrong, her children by her marriage with Samuel Armstrong, and John H. Chappell, a son by a former marriage.

"At the time of the death of the said Eliza A. H. Armstrong, she and her husband, the said Samuel Armstrong, owned community property, consisting of lands and personal property of the aggregate value of ten thousand dollars, and twenty-five thousand dollars in money.

"On November 10, 1880, said Samuel Armstrong qualified as survivor of the community estate in the manner prescribed by law.

"That he did not keep a fair and full account and statement of the

community debts and expenses paid by him, and of the disposition by him of such community property, and had wholly failed to account to said minors for their interest in such community estate with the increase and profits thereof.

"That he sold and disposed of all the community personal property, and converted and appropriated to his own use all notes, accounts, claims and moneys belonging to said community estate which were on hand at the time of the death of Mrs. Armstrong.

"That the inventory filed by the said Samuel Armstrong on qualifying as survivor has been lost, and he had kept no account or statement of his doings and acts as such survivor or otherwise, and a better statement and account of the property coming into his hands and the disposition made thereof could not be ascertained and given.

"That a portion of the land on hand at the time of Mrs. Armstrong's death had been sold by him, the persons to whom sold, the amount received for each tract sold, and the date thereof, were set out, amounting in the aggregate to more than one hundred thousand dollars.

"That he had loaned out the community moneys at interest, and had failed to account to said minors for either the principal or interest thereon.

"On January 17, 1890, Samuel Armstrong died at the residence of the plaintiff in error, Mrs. Stephenson (then Mrs. Stevens), and at the time of his death he had in his possession ten thousand dollars in money, a part of the community estate, and a large number of notes given in payment and part payment for community lands and community property so sold by him subsequent to November 10, 1880, amounting in the aggregate to seventy-five thousand dollars, all of which were immediately seized and converted by her.

"Defendants in error prayed that an accounting might be had and that it be ascertained in what amount the said Samuel Armstrong was indebted to them, and that an accounting be also had with plaintiff in error, and it be ascertained and determined how much of said notes, property and moneys she had appropriated and converted, and for judgment against her for their interest therein, and that such judgment might be decreed to be a lien on the community estate now on hand.

"If not entitled to said relief, then defendants prayed for such relief as they might be entitled to under the law and the evidence."

There is no merit in the contention that a survivor, by paying over to the heirs pro rata shares of the inventoried value of the estate, becomes ipso facto the owner of the entire community estate. If heirs who were competent to contract should accept such sum, or any other, as their share of the estate, they would, of course, have no claim on the estate, not because, however, they may have received their share as shown by the inventory, but because they had by their acceptance estopped themselves from claiming anything further in the absence of fraud or mistake. We think the survivor could make a settlement with the heirs, and

that they could accept any sum for their share of the estate, provided the settlement was fairly made and the heirs were competent to contract, and, of course, the entire community estate in such case, remaining after the settlement, would be the property of the survivor. The object to be accomplished by the survivor is fixed by the statute, but the mode of carrying out and accomplishing the design is left largely to the discretion of the individual. He must pay off the community debts, but it is left to him to determine the manner of payment. The vital question in this case, however, is, did the guardian of the minor children of John Chappell have the power and authority under the law of her appointment not only to receipt for money paid to her by the survivor, but thereby to release all the right, title and interest that the minors had in the community estate?

If she did, then the testimony as to the value of the lands and other property at the time of the settlement should have been admitted in evidence, and the issue should have been submitted to the jury; but if she did not have such authority, then the action of the court in excluding the testimony and in refusing to submit that issue was correct.

We are of the opinion that the receipt of the guardian for the amount paid her by Samuel Armstrong did not relinquish the right and title that the heirs owned in the community estate, and its only effect was to make that amount with legal interest a charge against their portion of the estate.

Upon the death of Mrs. Armstrong, the legal title to his share of the land belonging to the community estate vested at once in John Chappell, and upon his death his children, the appellees, succeeded to all his rights, subject, of course, to the payment of community debts. Sayles' Civil Stats., art. 1653. At the time that the guardian gave the receipt to the survivor, the title to their part of the lands had vested in the minors, and to divest them of their title, it must be held that a guardian could sell the real property of the wards without any sanction or authority on the part of the court in which the guardianship was pending, and without the ceremony of giving any kind of conveyance to it. While the guardian was authorized to receive any money due the estate of her wards, and doubtless, if the survivor had sold all the land, she would have been authorized, without an order of court, to receive any sums due the wards from the sale, still that is not the class of case that is presented for our consideration. The land had not been sold, and the guardian, without direct authority from the County Court, had no power or authority, by compromise or otherwise, to dispose of the interest that her wards had in the community estate of their grandmother. No such authority was shown, and in its absence we conclude that the receipts given by the guardian did not have the effect of relinquishing the title the minors had in the lands in controversy. Rainey v. Chambers, 56 Texas, 17; Doughty v. Cottreaux, 8 Texas Civ. App., 125; Specht v. Collins, 81 Texas, 213.

There is one mode recognized in Texas of divesting minors of their

title to real estate through a guardian, and that mode must be followed, or the title will not be divested. No evasion of the law can or will be sanctioned by the courts of the State. We have been referred to no authority that sustains the contention of appellants.

The deposition of Mrs. Stephenson explaining how she knew that the property in Texas was bought with the separate money of Samuel Armstrong was properly stricken out. She disclosed the fact that she knew nothing about how the money was obtained, except through what she obtained by hearsay from her father. The testimony was clearly obnoxious to article 2248, Sayles' Statutes. All that was not prohibited by the statute was immaterial, and could have been of no service to appellants on the trial. Much of the answer excluded was gratuitous, and not responsive to the interrogatory. It was clearly inadmissible to prove by J. O. Adams what Mrs. Stephenson and her former husband, Dr. Stevens, had told him.

Appellants have no cause to complain of the testimony of Mrs. Thruston as to what amounts had been paid her by Samuel Armstrong, for if her testimony showed different amounts from those shown by the receipts, the amounts shown by the latter were taken as correct, and no injury resulted.

It was not error to charge the jury that "where deeds to property are made to either husband or wife during marriage such property is presumed by law to be community property." The fact that the property was purchased shortly after the parties removed to Texas would not render the law inapplicable. The cases cited to sustain the converse of the above proposition are not in point. In addition to the presumption arising from the deeds being made to the husband during marriage, he swore, after the death of his wife, that the property was community, and the other evidence on the point tends to give it the same character. Mrs. Stephenson told witness Allen that the property came through her mother. It was not error to instruct the jury to find the value of all the personal property that had come into the possession of Mrs. Stephenson, from the community estate of her father and mother after the death of the latter. This was necessary in order to arrive at the value of the property in which appellees were interested. Appellees were entitled to their share of the value of the personal property at the time of trial.

The special charge asked by appellants, in which it was sought to instruct the jury that appellants should be credited with the value of improvements placed on the community lands, taxes and commissions had nothing in law or justice to commend it, and was properly refused. The improvements were made and the taxes paid with money belonging to the community, and there would be little justice in compelling appellees to pay certain imaginary commissions claimed to be due to the survivor who, together with appellants, had been through many years enjoying the fruits and revenues arising from the whole of the community estate, while the appellees were getting nothing. There is no evidence

that the improvements were made or taxes paid with the separate money of Samuel Armstrong.

The case was submitted to the jury on the following special issues, to which are appended the answers given to the jury:

"Was the property in Samuel Armstrong's possession at the date of the death of his wife, Eliza A. H. Armstrong, his separate property, or was it the community property of himself and wife, Eliza A. Armstrong?

"Answer: We find this to be the community property of Samuel and Eliza A. H. Armstrong.

"What is the value in money to-day of all the personal property, notes and money of every kind and description which Mrs. Mary A. Stephenson has received at any and all times from the community estate of both her father, Samuel Armstrong, and her mother, Eliza A. H. Armstrong, since the death of said Eliza A. H. Armstrong?

"Answer: Total twenty-eight thousand and nine hundred and nineteen 69-100 dollars."

On the above findings of fact, the court decreed that appellees had received $2915.80 from the community estate of Samuel Armstrong and Eliza A. H. Armstrong, that they were entitled to a recovery of seven thirty-sixths undivided interest, as heirs of their father, John Chappell, and as heirs of their uncle, Wm. Armstrong, in all community lands on hand; and an undivided seven thirty-sixths interest in the value of all community property traced into the hands of Mrs. Mary A. Stephenson upon bringing into hotch potch and accounting for said sum of $2915.90, with legal interest thereon from date of its payment. That part of the judgment had a basis in the findings of the jury, in the admissions in the pleadings of appellants, and the law of descent and distribution. In addition to the above, it was decreed that appellees should recover from appellants a seven thirty-sixths interest in five tracts of land that were on hand and unsold, describing by surveys and metes and bounds. It was specially denied by appellants in their answer that they had on hand any of the lands described in the petition, save and except three tracts which were fully described. This raised an issue of fact, and that issue was not determined by the jury. In addition, it was found in the judgment that certain lands had been sold by Samuel Armstrong, but this was not admitted in the pleadings or found by the jury. The appellants had demanded a trial by jury, and had the right to have the jury to pass upon every contested point. "A special verdict is defective and must be set aside, which does not find all the facts put in issue by the pleading, although the evidence may establish beyond any controversy the existence of the facts not found." Moore v. Moore, 67 Texas, 294; Ledyard v. Brown, 27 Texas, 393; Smith v. Warren, 60 Texas, 462.

For the reason that the verdict did not find on all the contested issues which enter into and form a part of the judgment, the opinion

heretofore rendered affirming the same is withdrawn, and the judgment
is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 13, 1896.

### ON MOTION TO RETAX COSTS.

FLY, ASSOCIATE JUSTICE.——The record in this case is very bulky and
cumbersome, containing 297 pages of typewritten matter, much of which
was not necessary to a decision of the case.  Transcripts should not be
incumbered with matter which can have no possible bearing upon the
points involved in a case.  It not only entails additional labor upon
courts, but is a burden that should not be laid upon the shoulders of the
losing party, and when it is done, the cost of inserting such irrelevant
matter will be taxed against the party responsible for it.  Insurance Co.
v. Long, 51 Texas, 89; Blum v. Davis, 56 Texas, 423.

In this case, ten pages of the transcript are consumed in a copy of
the writ of error bond, which could and should have been so written as
not to have comprised more than one-third of the space.  There is noth-
ing in the statute requiring the whole judgment to be inserted in an
appeal bond.  The law is fully complied with in describing the judg-
ment by giving the case number, names of all the parties, the nature of
the recovery, with the names of the parties in favor of and against whom
rendered.  Hollis v. Border, 10 Texas, 277; Smith v. Cheatham, 12
Texas, 37; Herndon v. Bremond, 17 Texas, 432; In re Estate of John
O'Hara, 60 Texas, 179.  While it is not contemplated in the statute
that the judgment, in haec verba, should be inserted in the appeal bond,
it does not of course render it invalid, but when a long judgment con-
taining descriptions of tracts of lands, with copious field notes, is copied
into the bond, the party so copying should be made to pay for it.  There
is also copied into the record a supersedeas bond, covering ten pages of
the record, which had no place whatever in it.  In addition, there are
motions to quash depositions about which no point was made, two
copies of assignments of error, and other superfluous matter, amount-
ing to at least one hundred pages of the transcript.  The costs for this
matter, amounting to sixty dollars, will be taxed against plaintiffs in
error.

*Ordered accordingly.*

Delivered May 27, 1896.