**CITY OF SAN ANTONIO, Appellant,**

v.

**Ernest A. AGUILAR, et al., Appellees.**

**No. 04–83–00401–CV.**

Court of Appeals of Texas,
San Antonio.

Feb. 15, 1984.

Rehearing Denied March 9, 1984.

Writ filed April 6, 1984.

Crawford B. Reeder, San Antonio, for appellant.

Harry Nass, San Antonio, for appellees.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

BUTTS, Justice.

Appellees, emergency medical technicians employed by the City of San Antonio, filed this motion to dismiss for want of jurisdiction the appeal of the City of San Antonio. Judgment awarding the emergency medical technicians (EMTs) overtime back-pay was entered on June 15, 1983. The City of San Antonio filed its written notice of appeal on June 27, 1983. TEX.R. CIV.P. 356(c). The EMTs then filed this

motion to dismiss for want of jurisdiction. We deny the motion.

EMTs contend the City's appeal is invalid because (1) the City Council did not authorize the city attorney to pursue the appeal, and (2) the city council violated the Open Meetings Act. TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon Supp.1982–1983).

The undisputed fact is that the city council neither passed an ordinance nor a formal resolution authorizing the appeal.[1] The city manager, Lou Fox, executed an affidavit:

I am familiar, in a general way, with the case of Aguilar and Acquart, et al., (EMTs) against the City for overtime pay which they claim is due them from the City. After the state Supreme Court decided a similar prior case partly against the City last fall, the City Attorney discussed the Aguilar and Acquart case with me and advised me that since there were about one hundred seventy (170) EMTs in that case it involved a great deal of money. She advised that there were two legal issues in the Acquart and Aguilar case that had not been presented to the courts in the first case and that these issues should be resolved by the courts. I felt that the Council should be advised of this matter and I did so advise the Council, before the case was tried last April. I advised them again after the judgment had gone against the City and both the City Attorney and I recommended that the case be appealed. No formal vote of the City Council was taken at this latter time but there was a general assent with the exception of one Councilman who voiced the opinion that no appeal should be taken. There were more than six (6) Councilmen present.[2] I told them that the case would be appealed and I told the City Attorney, who was present, to go ahead with the appeal.

Neither the minutes of the city council meetings from June 16, 1983 to July 14,

---

1. Unless otherwise noted, all statutory references are to the charter of the City of San Antonio, effective January 1, 1952.

2. There are eleven members of the San Antonio City Council. A quorum, therefore, consists of six members of the council. § 13 of the charter.

1983 nor the certified copies of the agenda of the city council meetings from April 4, 1983 to August 4, 1983 refers to any such discussion.

We take judicial notice of the charter of the City of San Antonio. *Cone v. Lubbock*, 431 S.W.2d 639, 647 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.). The City of San Antonio constitutes a municipal corporation. § 1. Pursuant to TEX. CONST. art. XI, § 5, this municipal corporation has the powers enumerated in the charter, provided those powers do not conflict with nor are prohibited by Texas law. By its charter, the City of San Antonio has adopted a council-manager government. § 2. The governmental or legislative functions are assigned to the city council; the proprietary or ministerial functions, to the city manager. § 2; § 46(3); *see Ostrom v. San Antonio*, 94 Tex. 523, 62 S.W. 909, 910 (1901); *see also Seltenreich v. Fairbanks*, 103 F.Supp. 319 (D.Alaska 1952), *aff'd*, 211 F.2d 83 (9th Cir.1954), *cert. denied*, 348 U.S. 887, 75 S.Ct. 206, 99 L.Ed. 697 (1954); *Visone v. Reilly*, 80 N.J.Super. 494, 194 A.2d 248, 250 (1963); *Welch v. City of Long Beach*, 109 Cal.App.2d 561, 241 P.2d 26, 28 (1952).

It is established in Texas that a municipal activity may be governmental or proprietary:

> It is well settled that activities which are carried on by a municipality, pursuant to state requirement, in discharge of the state's obligation to provide for the health, safety or general welfare of the public generally, or which are voluntarily assumed for the benefit of the public generally rather than for the benefit of its own citizens, are performed in a governmental capacity and as a governmental function. [Citations omitted.] On the other hand it is equally well settled that all other municipal activities are carried on in a private corporate capacity and are proprietary functions. [Citations omitted.]

*Cone, supra* at 643.

■ Frequently, governmental and proprietary functions dovetail into each other

to such an extent that it is difficult to distinguish one from the other. *Trenton v. New Jersey*, 262 U.S. 182, 188–91, 43 S.Ct. 534, 537–38, 67 L.Ed. 937, 941–43 (1923). The decision whether a service by a city is proprietary or governmental is a judicial, and not a legislative function. *Cone, supra* at 643–44.

All council meetings are to be open to the public. § 11. The council may act by resolution, except where the charter requires an ordinance. § 18. As chief administrator of the city, the city manager controls the legal department, one of the administrative departments of city government. § 50. The city attorney heads the legal department and is charged with the following responsibilities:

> Sec. 54. The city attorney shall be the chief legal adviser of all offices, departments and agencies and of all officers and employees of the city in matters relating to their official powers and duties. *He shall represent the city in all legal proceedings. He shall perform all services incident to his position as may be required by statute, by this Charter or by ordinance.* He shall draft all proposed ordinances granting franchises and shall pass upon all papers, documents, contracts and other instruments in which the city may be interested. [Emphasis ours.]

## AUTHORITY OF CITY ATTORNEY

■ We will examine the nature of the authority granted the city attorney by the charter. It is obvious an agency-principal relationship exists between the city attorney (agent) and the city (principal). *Portnow v. Berg*, 593 S.W.2d 843, 845 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ). Express authority exists where the principal has made it clear to the agent that he wants the act under scrutiny to be done. H. Reuschlein & W. Gregory, AGENCY AND PARTNERSHIP, § 14 (1979); implied authority exists where there is no proof of express authority, but appear-

ances justify a finding that in some manner the agent was authorized to do what he did; in other words, there is circumstantial proof of actual authority. *Id.* at § 15.

■ Rule 12 of the Texas Rules of Civil Procedure requires a party believing that a suit is being prosecuted or defended without authority by an attorney to move that such attorney not be permitted to appear in the cause before the parties have announced ready for trial. At the hearing the burden is upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Such a motion may not be raised for the first time on appeal. *Valley International Properties, Inc. v. Brownsville Savings and Loan Association,* 581 S.W.2d 222, 226 (Tex.Civ.App.—Corpus Christi 1979, no writ); TEX.R.CIV.P. 12.

■ The EMTs could have raised the question of the city attorney's authority to defend this suit by motion before the trial of the case. However, they now raise lack of authority only as to one aspect of the case, the appeal. "Legal proceeding" includes all proceedings authorized or sanctioned by law, and brought or instituted in a court of justice or legal tribunal for the requiring of a right or the enforcement of a remedy. BLACK'S LAW DICTIONARY, 807 (rev. 5th ed. 1979). An appeal is a step in a judicial proceeding. *Id.* at 88–89. The term "appeal" can clearly be subsumed under "legal proceedings" in § 54. Moreover, the command that the city attorney shall perform "all services incident to his position" is a broad grant of implied authority. *See Florida Parole and Probation Commission v. Thomas,* 364 So.2d 480, 481 (Fla.App.1978). We hold the city attorney possessed the implied authority to pursue this appeal.

## PRESUMPTION OF AUTHORITY

■ Not only does the city attorney have implied authority to pursue the appeal, but there is a presumption that when a city attorney brings suit on behalf of a city, the suit is authorized, absent a sworn plea to the contrary. *O'Connor v. Laredo,* 167

S.W. 1091, 1092 (Tex.Civ.App.—San Antonio 1914, no writ). *See also Breen v. Beto,* 421 F.2d 945, 949 (5th Cir.1970); *Kelly v. Murphy,* 630 S.W.2d 759, 761 (Tex.Civ.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *West v. City National Bank of Birmingham,* 597 S.W.2d 461, 463 (Tex.Civ.App.—Beaumont 1980, no writ); *Hidalgo County Drainage District No. 1 v. Magnolia Petroleum Co.,* 47 S.W.2d 875, 876 (Tex.Civ.App.—San Antonio 1932, writ ref'd).

■ Further, an attorney who has conducted a case in the trial court is presumed to have authority to pursue an appeal, although this presumption can be rebutted. *Stephenson v. Chappell,* 12 Tex.Civ.App. 296, 33 S.W. 880 (1896, no writ); 7 TEX. JUR.3d *Attorneys at Law* § 63 (1980).

■ An attorney is also presumed to have authority to file notice of appeal, absent evidence to the contrary. *Real Estate Land Title and Trust Co. v. General Missionary Society of the German Baptist Churches of North America,* 111 S.W.2d 1196, 1197 (Tex.Civ.App.—Fort Worth 1937, no writ) (where attorney executes appeal bond for corporation represented at trial, corporation is bound if it does not object). *See also Harrison v. Barngrover,* 118 S.W.2d 415, 419 (Tex.Civ.App.—Beaumont 1938, writ ref'd) (appellant's attorney has authority to make appellant party to the execution of supersedeas bond).

Appellees therefore have the burden of proof to rebut the presumption that the city attorney had authority to pursue this appeal. They heavily rely on *Hager v. State,* 446 S.W.2d 43 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.), arguing that since notice of appeal was unauthorized, jurisdiction of the appellate court did not attach. *Id.* at 49. We do not view *Hager* to be controlling. In *Hager,* councilman Hager at a city council meeting voted to authorize an appeal from a mandamus action to require a recall election of himself. Hager was disqualified by the appellate court from so voting because of his personal and pecuniary interest in the outcome.

Because of Hager's disqualification, the council vote for appeal then stood at two-to-two; consequently, there was no majority authorization for the appeal. *Id.* at 49–52.

Hager differs from the case at bar in two relevant ways. Unlike *Hager*, in the case at bar, there is an affidavit that the majority of the council favored the appeal. Second, in *Hager*, two members of the city council in a motion to clarify position of the parties, stated that they wished to dissociate themselves from the appeal. *Id.* at 47. In this case, no member of city council openly expressed opposition to the appeal.

We find that section 54 of the city charter authorizes the city attorney to appeal as a step in a legal proceeding before this Court. Since the appellees do not present any evidence to rebut the presumption of authority in this case, we find that the city attorney had authority to pursue this appeal.

## OPEN MEETINGS ACT

■ EMTs secondly argue that this Court has no jurisdiction of this appeal because the Open Meetings Act was violated. TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon Supp.1982–1983). Undisputed oral argument disclosed that over the years the City has customarily appealed its cases without an ordinance or resolution of the city council. Thus, a course of dealing between the City, as client and principal, and the city attorney, as agent, has developed, from which the city attorney could rightfully infer that he needs no such resolution or ordinance. *See e.g., Felker v. Johnson,* 189 Ga. 797, 7 S.E.2d 668 (1948); *Doner v. Honstead,* 61 Idaho 669, 106 P.2d 868 (1940); H. Reuchlein, *supra,* § 21. By its failure to object to the appeal in this case, the city council can be said to have ratified the agreement to appeal by the city manager and the city attorney. *See Jamail v. Thomas,* 481 S.W.2d 485, 490 (Tex. Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.).

■ Does a decision to go forward with an appeal constitute a formal action requiring that the decision be reached in an open and public meeting? *See generally* Annot., 38 A.L.R.3d § 6(b) 1070 (1971). The Texas Open Meetings Act defines meeting:

Section 1. As used in this Act:

(a) 'Meeting' means any deliberation between a quorum of members of a governmental body at which *any public business or public policy over which the governmental body has supervision or control is discussed or considered, or at which any formal action is taken.* It shall not be construed that the intent of this definition is to prohibit the gathering of members of the governmental body in numbers of a quorum or more for social functions unrelated to the public business which is conducted by the body or for attendance of regional, state, or national conventions or workshops as long as no formal action is taken and there is no deliberation of public business which will appear on the agenda of the respective body. [Emphasis ours.]

Section 2 of the Open Meetings Act explains when it should be applied:

Sec. 2(a) Except as otherwise provided in this Act or specifically permitted in the Constitution, *every regular, special, or called meeting or session of every governmental body shall be open to the public;* and no closed or executive meeting or session of any governmental body for any of the purposes for which closed or executive meetings or sessions are hereinafter authorized shall be held unless the governmental body has first been convened in open meeting or session for which notice has been given as hereinafter provided and during which open meeting or session the presiding officer has publicly announced that a closed or executive meeting or session will be held and identified the section or sections under this Act authorizing the holding of such closed or executive session. [Emphasis ours.]

In the present case what the city manager describes in his affidavit is neither a regular, special, or called meeting, and there-

fore does not fit into the Open Meetings Act definition of "meeting." Second, as discussed earlier, whether to appeal is a *ministerial* rather than a *governmental* decision. Third, there was no formal resolution or ordinance emerging from this session. Rather, the city manager and the city attorney in the presence of some members of the city council reached an informal, in-house decision to appeal. The Open Meetings Act does not apply where definitionally there was no "meeting." *Florida Parole and Probation, supra* at 481.

We understand that the Open Meetings Act should be broadly construed to protect the public's right to know. However, no public meeting was necessary to consider the appeal. When, as in this case, a city council has been represented by its city attorney in the trial court, the obligation of counsel is to advise the council of the prospective merits of an appeal. Then he must insure appeal. To expect that the decision to appeal must be ratified at a formal public meeting is unrealistic. The city council of a large city would be hard pressed to comply with the Open Meetings Act and also meet the precise requirements of filing notice of appeal. *See e.g. Benson v. McCormick,* 195 Colo. 381, 578 P.2d 651, 653 (1978); TEX.R.CIV.P. 356.

Compliance with the Open Meetings Act would also render effective legal counseling virtually impossible. The city council, city manager, and city attorney in this case would have been restricted to speak freely about the decision to appeal, had this discussion been opened to opposing parties. *See e.g. Minneapolis Star Tribune v. Housing and Redevelopment Authority in and for the City of Minneapolis,* 246 N.W.2d 448, 454 (Minn.1976).

We believe that an open meeting on the decision to appeal would also have violated the attorney-client privilege, as discussed in *Sutter Sensible Planning, Inc. v. Sutter County Board of Supervisors,* 122 Cal. App.3d 813, 176 Cal.Rptr. 342, 349 (1981); *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480, 488–92

(1968). The city attorney possesses the same power to act for the city in the conduct of its litigation as does an attorney for a private individual. *See Pennsylvania Railroad Co. v. City of Pittsburgh,* 335 Pa. 449, 6 A.2d 907, 912 (1939).

 Where, as here, the city attorney has authority derived from the city charter to represent the city in all *legal proceedings,* the city council is not required to pass a resolution or an ordinance as a prerequisite to an appeal. We hold this is an internal administrative decision and not within the purview of the Open Meetings Act. We, therefore, further hold the failure of the city attorney to secure a resolution or an ordinance as a predicate to this appeal does not deprive this Court of jurisdiction of the appeal. We deny the motion to dismiss for want of jurisdiction.