UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 94-10153

———————————————

JAMES PASANT,

Plaintiff-Counter-
Defendant-Appellant,

versus

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

Defendant-Counter-
Plaintiff-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————

(April 26, 1995)

Before REYNALDO G. GARZA, DeMOSS and BENAVIDES, Circuit
Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Plaintiff-Appellant James Pasant ("J. Pasant") appeals the
district court's judgment granting Defendant-Appellee Jackson
National Life Insurance Company's ("JNL") motion for summary
judgment and denying J. Pasant's cross motion for summary judgment.
We reverse in part and affirm in part.

FACTS AND PROCEDURAL HISTORY

JNL was founded in 1961 by J. Pasant's father, Anthanese J.
Pasant ("A.J. Pasant"), and in subsequent years A.J. Pasant hired
his three sons, including J. Pasant, to work in the family
controlled business. By 1986, JNL was a publicly traded company,

with A.J. Pasant acting as President, Chairman of the Board and Chief Executive Officer ("CEO").

In late 1986, Prudential PLC of London, England ("Prudential") acquired JNL. A.J. Pasant was allowed to retain his positions as President, CEO and Chairman of the Board after the takeover. As part of the acquisition, Prudential entered into renewable one-year employment contracts with each member of the Pasant family. On September 18, 1986, JNL entered into a written employment agreement with J. Pasant (hereafter referred to as the "1986 contract"). The 1986 contract provided that: 1) J. Pasant would continue as vice-president and managing officer of JNL's Texas subsidiary; 2) J. Pasant would receive an annual minimum guaranteed income of $200,000, as well as incentive compensation; and 3) in the event that J. Pasant's employment was terminated, he would receive $87,500 in return for a covenant not to compete. The 1986 contract was to last from November 25, 1986 to November 24, 1987. At the option of JNL, the contract could be renewed for two additional one-year periods.

The JNL Board of Directors met for the first time after Prudential's acquisition on December 19, 1986. Both A.J. Pasant and J. Pasant were in attendance. During that meeting, three new committees were created and approved by the Board. The compensation committee was established to handle management appointments and salary policy, with the appointment of the president and other senior management of JNL to be the responsibility of Prudential itself. A.J. Pasant and his three

sons, including J. Pasant, were appointed to the executive committee only.

JNL exercised its first renewal option, and extended J. Pasant's contract to November 24, 1988. When the second one-year period ended, J. Pasant notified JNL through Prudential that he wished to renegotiate some provisions of his employment contract. By letter dated November 17, 1988, Prudential notified J. Pasant that he would continue as vice-president and managing officer of the Texas subsidiary until the subsidiary was merged into the parent company, at which time he would be regional manager of JNL's Texas operation. J. Pasant was also notified that he would receive a guaranteed minimum annual salary of $250,000, as well as a bonus based on sales volume. The employment contract was extended to December 31, 1989, and the $87,500 non-compete covenant amount was extended to December 31, 1990.

Not satisfied with his new employment compensation conditions, J. Pasant began negotiations with A.J. Pasant. On November 21, 1988, A.J. Pasant executed an amendment to the 1986 contract providing for an increase in the non-compete covenant amount from $87,500 to $175,000 and a $150,000 relocation allowance after J. Pasant's termination (hereafter referred to as "first amendment"). On that same date, A.J. Pasant and J. Pasant executed a Deferred Compensation Agreement ("Agreement") providing for $100,000 to be paid to J. Pasant in quarterly payments over five years. Prudential did not receive a copy of that Agreement.

A.J. Pasant executed a second amendment on November 28, 1988 that modified the 1986 contract in the following ways: 1) it clarified that the change in J. Pasant's title from vice-president and managing officer to regional manager would not significantly alter his duties; 2) it guaranteed that J. Pasant would receive a minimum salary of $250,000; and 3) it extended the employment agreement through December 31, 1989.

Prudential learned of the existence of the two amendments in early 1989. In October 1990, David Pasant informed J. Pasant that JNL would honor the modifications enumerated in the second amendment executed on November 28, 1988. J. Pasant was also told that the modifications included in the first amendment executed November 21, 1988, as well as the Agreement executed on the same date, would not be accepted or honored by JNL.

J. Pasant was terminated from JNL in February 1991. JNL refused to fulfill the terms of the first amendment and the Agreement. JNL also refused to pay the $87,500 under the non-compete covenant in the original 1986 contract.

J. Pasant filed suit against JNL in Texas state court in July 1991, and JNL removed it to federal court based on diversity jurisdiction. JNL moved for summary judgment, asserting that the first amendment and Agreement were unenforceable. J. Pasant filed a cross-motion for summary judgment, asserting that JNL ratified the disputed amendment and Agreement. The district court granted JNL's motion for summary judgment and denied J. Pasant's cross-motion. The court rejected J. Pasant's claims on the first

amendment and Agreement based on its holding that A.J. Pasant did not possess the authority to enter into the first amendment or Agreement; that neither were supported by consideration; that JNL did not ratify either; and that J. Pasant could not rely on the defense of equitable estoppel. The court did, however, order JNL to pay J. Pasant the non-compete covenant amount of $87,500 contained in the 1986 contract.

## STANDARD OF REVIEW

We review *de novo* the district court's judgment granting JNL's motion for summary judgment and denying J. Pasant's cross-motion for summary judgment. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 956 (5th Cir. 1993). Summary judgment is appropriate when there exists no genuine issue of material fact so that the moving parties is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In making this determination, the Court must draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## ANALYSIS

"Transactions involving an interested director are subject to strict judicial scrutiny but are not voidable unless they are shown to be unfair to the corporation. . . . [T]he burden of proof is on the interested director to show that the action under fire is fair to the corporation." Gearhart Indus., Inc. v. Smith Int'l, Inc., 741 F.2d 707, 720 (5th Cir. 1984).

*Actual Authority*

J. Pasant contends that from 1972, when he was first hired, to 1986, when Prudential took over, A.J. Pasant possessed exclusive authority over matters concerning his employment compensation terms. As proof of A.J. Pasant's authority over employment compensation issues, J. Pasant asserts that, even after the Prudential takeover, A.J. Pasant negotiated and executed all of his employment compensation issues, many of which were approved and ratified by JNL and Prudential. For example, J. Pasant points out that in 1987 A.J. Pasant gave him a $50,000 annual salary increase and that, from 1986-1988, A.J. Pasant unilaterally awarded several performance-based bonuses, all of which were approved and/or ratified by JNL and Prudential. Additionally, Prudential and JNL expressly ratified the second amendment through David Pasant's letter from October 1990.

The law of actual authority in Texas is well established. Actual authority includes both express and implied authority. Express authority exists "where the principal has made it clear to the agent that he wants the act under scrutiny to be done." *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683 (Tex. App. 4 Dist. 1984). Implied authority, however, exists "where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized; in other words, there is circumstantial proof of actual authority." *Id.* at 683-84. Implied authority may arise in several ways: (1) from some indication from the principal that the agent possesses the authority; (2) from

being the necessary implication of an expressly authorized act; and (3) from a previous course of dealing. *Wells Fargo Business Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 945 (5th Cir.), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Texas Conservative Oil Co. v. Jolly*, 149 S.W.2d 265, 267 (Tex. Civ. App.--El Paso 1941, no writ).

We conclude that a genuine issue of material fact exists concerning whether A.J. Pasant had implied actual authority to negotiate and execute the first amendment and Agreement. Reviewing the summary judgment evidence in the light most favorable to the nonmovant, we find that J. Pasant has presented evidence indicating that the officers of JNL and Prudential continued a course of dealing whereby A.J. Pasant possessed the authority to negotiate employment agreements by pointing J. Pasant's employment negotiations in the direction of A.J. Pasant. Although Prudential created a compensation committee to handle management appointments and salary policies within JNL after the takeover, compensation and appointment issues concerning the president and senior management personnel were not expressly covered under the authority of the committee. Thus, Prudential did not expressly remove A.J. Pasant's authority to negotiate and execute agreements, modifications, or amendments regarding salary and other compensation issues. In addition, Prudential and JNL continued to approve and/or ratify raises and performance-based bonuses issued by A.J. Pasant for J. Pasant after the Prudential takeover. Therefore, we reverse the district court's finding that A.J. Pasant did not possess implied

actual authority to negotiate and execute the first amendment and Agreement.

*Consideration*

J. Pasant contends that his future services as a regional manager for JNL provided sufficient consideration for the first amendment and Agreement. Under the 1986 Contract, J. Pasant's obligations ended on November 25, 1989. However, he continued to work for JNL until February 1991 in reliance of the first amendment and Agreement. J. Pasant argues that these two years of services after the 1986 contract expired establishes adequate consideration.

It is well-settled in Texas that consideration may take the form of a benefit to the promissor or a detriment to the promisee. *Diamond Paint Co. of Houston v. Embry*, 525 S.W.2d 529, 533 (Tex. Civ. App.--Houston (14th Dist.) 1975). The burden of proving a lack of consideration is on the pleader. *Winters v. Langdeau*, 360 S.W.2d 515, 516 (Tex. 1962). "It is a rebuttable statutory presumption that a written instrument is prima facie proof of consideration." *Richardson v. Office Bldgs. of Houston*, 704 S.W.2d 373, 375 (Tex. App. 14 Dist. 1985).

JNL contends that the compensation provided by the first amendment and Agreement was merely to reward J. Pasant for past services to JNL, which cannot form the basis for valid consideration.[1] JNL argues that, on the date that the first amendment was executed, A.J. Pasant wrote to J. Pasant that he

---

[1] *Tim W. Koerner & Associates, Inc. v. Aspen Labs, Inc.*, 492 F. Supp. 294, 303 (1980), *aff'd*, 683 F.2d 416 (5th Cir. 1982).

-8-

wished to increase J. Pasant's compensation because of his "efforts with the Company since 1982." JNL notes that A.J. Pasant also wrote that he wanted to thank J. Pasant "for the tremendous efforts [he] [had] put forth since 1982 on behalf of Jackson National." JNL also argues that the Agreement itself states that J. Pasant "has rendered valuable services" to JNL.

Even if part of A.J. Pasant's motivations was a reward J. Pasant for past services, a promise that is supported by a mixture of gift and bargain is supported by adequate consideration. CALAMARI AND PERILLO, CONTRACTS § 4-7 at 200 (3d ed. 1987); *see Mahrer v. Mahrer*, 510 S.W.2d 402, 404 (Tex. Civ. App.--Dallas 1974). We find that adequate consideration exists to support the disputed amendments. Because the original 1986 Contract ended in November 1989, JNL cannot argue that J. Pasant's continued work for JNL was already covered under the original contract. The services that J. Pasant rendered from November 1989 until his termination in February 1991 provided adequate consideration for the agreements. Therefore, we reverse the judgment of the district court granting summary judgment on the issue of consideration.

## REMAINING ISSUES ON APPEAL

J. Pasant also raises on appeal the issues of express authority, apparent authority, estoppel, and ratification. We agree with the district court conclusions that, 1) A.J. Pasant did not have express authority, 2) A.J. Pasant did not have apparent authority, 3) estoppel does not apply, and 4) JNL's silence did not constitute ratification of the first amendment and Agreement.

## CONCLUSION

For the reasons articulated above, we REVERSE the district court's summary judgment denying J. Pasant relief on the basis that the first amendment and Agreement were unenforceable. Specifically, because a fact issue is present with respect to whether 1) A.J. Pasant did have implied authority to act on behalf of JNL or to bind it to the first amendment and Agreement and 2) the first amendment and Agreement lacked consideration, we REMAND J. Pasant's claims against JNL. The district court's findings with respect to all other issues are left undisturbed and are AFFIRMED.