Opinion issued November 15, 2007
















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00944-CV
  __________
 
HP/MANAGEMENT SERVICES, INC., Appellant
 
V.
 
GUARANTEED NURSING STAFF, L.L.C., Appellee
 




 
 
On Appeal from County Civil Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 781652
 




 
 
MEMORANDUM OPINION



          After a bench trial, Guaranteed Nursing Staff, L.L.C. (“GNS”), appellee,
prevailed on its breach of contract claim against HP/Management Services, Inc.
(“HP”), appellant. In eight issues, HP contends that the trial court erred in rendering
judgment for GNS because GNS did not file any pleadings against HP and the
evidence is legally and factually insufficient to establish that (1) a contract existed
between GNS and HP, (2) HP was responsible for any contractual obligation incurred
by Hermann Park Manor relating to GNS, and (3) Michael Mileski was acting for or
on behalf of HP when he signed the agreement. HP also appeals the award of
attorney’s fees. We reverse and render judgment in favor of HP.
Background
          Hermann Park Manor, a healthcare facility, entered into a contract with GNS
for GNS to provide temporary personnel staffing for the facility. The contract,
entitled “Supplemental Staffing Agreement,” was signed by Michael Mileski, as the
administrator of Hermann Park Manor, and Helen Royston, as the marketing director
of GNS. GNS was not fully compensated for the services it provided under the
contract, and it sued the following parties for, among other things, breach of contract: 
HCCI-Houston, Inc. d/b/a Hermann Park Manor, the owner of Hermann Park Manor;
HP, the management company for Hermann Park Manor; and Mileski, the
administrator of Hermann Park Manor. GNS proceeded to trial against Mileski and
HP.


 
          At trial, Cynthia Champion, the owner of GNS, gave undisputed testimony that,
while she believed that Mileski had signed the Supplemental Staffing Agreement on
behalf of Hermann Park Manor, she learned, after this suit had been filed, that
Mileski, in addition to being Hermann Park Manor’s administrator, was also HP’s
employee at the time that he signed this contract. During Champion’s testimony, the
parties stipulated that GNS was owed $16,853.98 in compensation for services that
it provided under the contract.
          The court also heard testimony from H.P.’s president Douglas Mittleider. 
Mittleider testified that HCCI owns Hermann Park Manor. He also testified that,
pursuant to the Long Term Care Facility Management Agreement between HP and
HCCI, HP is responsible for running the day-to-day operations of Hermann Park
Manor on behalf of HCCI and for appointing an administrator to serve as the onsite
manager of Hermann Park Manor. This agreement nevertheless specifies that HCCI
retains ownership and control over the management duties and obligations of
Hermann Park Manor. 
          HP appointed Mileski as the administrator of Hermann Park Manor. Mittleider
testified that, although Mileski was an employee of HP, Mileski did not sign the
Supplemental Staffing Agreement with GNS on behalf of HP. Mittleider testified that
Mileski signed the Agreement on behalf of the facility and its sole owner: Hermann
Park Manor and HCCI, respectively. Mittleider further testified that HP (1) did not
enter into the Supplemental Staffing Agreement with GNS, (2) did not make any
payments to GNS under this Agreement, and (3) did not enter into any vendor
contracts while it managed Hermann Park Manor. Mittleider testified that Mileski,
as the administrator of Hermann Park Manor, decided which invoices under the
Agreement with GNS were to be paid, and that HCCI, not HP would make these
payments. No evidence controverted Mittleider’s testimony that Hermann Park
Manor was owned by and doing business as HCCI or that the Long Term Care
Facility Management Agreement defined the relationship between Mileski, HP,
HCCI, and Hermann Park Manor. 
          The Long Term Care Facility Management Agreement between HCCI and HP
was entered into evidence. Under the terms of this Agreement, HP was required to
get permission, in writing, from HCCI to contract with any third party on behalf of
HCCI involving a value in excess of $10,000. The Agreement also provided that HP
would indemnify HCCI if HP breached the Agreement. The Agreement provides in
pertinent part that:
1.03   Management of Facility. During the term of this Agreement,
[HP] shall on behalf of [HCCI] manage all aspects of the
operation of [Hermann Park Manor], including, but not limited to,
staffing, accounting, billing, collections, setting of rates and
charges and general administration. In connection therewith,
[HP] (either directly or through supervision of employees of
[Hermann Park Manor]) shall: 

                    . . . 
 
          (j)      Negotiate and enter into in the name of and on behalf of
[HCCI] such agreements, contracts and orders as it may
deem necessary or advisable, for the furnishing of services,
concessions and supplies for the operation and
maintenance of [Hermann Park Manor]; provided,
however, that [HCCI] must approve, in writing, any
agreement, contract or order, which has a term greater than
one (1) year or which requires annual payments of more
than $10,000.

                    . . .

          5.09   Costs and Expenses: Indemnity

          . . . 
 
          (b)     [HP] agrees to indemnify and hold [HCCI] and its officers,
directors, agents and employees harmless from and against
all losses, claims, damages or other liabilities, including
without limit, reasonable attorneys fees and the costs and
expenses incurred in connection therewith, arising out of
or relating to the willful misconduct, breach of contract or
gross negligence of [HP], in performing its duties under
this Agreement.

Mittleider testified that he did not believe HP had received written approval from
HCCI to bind HCCI to the agreement with GNS, which was valued in excess of
$10,000. 
          After the close of evidence, the trial court made the following findings of fact
and conclusions of law:
Findings of Fact



1.       On December 26, 2001, Defendant, Michael Mileski, an
employee of HP Management Services and Administrator of
Hermann Park Manor, executed a written contract with Plaintiff
Guaranteed Nursing Staff to provide temporary personnel staffing
for their local facility. Prior to executing the agreement,
Defendants failed to properly disclose that the company could not
or would not willingly pay for the services rendered under the
contract, within the terms of the agreement. Specifically, prior to
entering into the agreement, Defendants concealed the material
fact that their business was operating under budget constraints
and that they would not make timely payments pursuant to their
contractual obligations.

2.       From December 26, 2001 until on or about April 22, 2002,
Plaintiff provided supplemental staffing services to the Defendant
under the executed agreement which provided for payment within
30 days after receipt of the invoice. Clause 5(c), Compensation
and Payment, provides “All amounts due to the Agency are due
within (30) days from receipt of invoice. Facility will send all
payments to the address printed on the Agency invoice.” 
Defendants requested and accepted the temporary personnel
services of the Plaintiff for their healthcare facility and became
bound to pay Plaintiff its designated charges, which were
reasonable and customary for such services.

3.       The account accurately sets forth the services, the dates of
services, the hours and prices for the services that the Plaintiff
provided Defendant. The account represents the record of the
transactions that Plaintiff systematically keeps in the ordinary
course of business. Defendants have refused to make full
payment for services rendered and the principal balance due
Plaintiff on the account is $16,853.98 after allowing for all just
and lawful offsets, payments and credits.

4.       Subsequent to the execution of the contract, Defendants have
failed to perform the terms of the contract without legitimate legal
excuse. Defendants have failed to pay Plaintiff for services
rendered.

5.       As a result of the Defendants’ conduct, Plaintiff found it
necessary to employ attorneys. Plaintiff also properly presented
its breach of contract claim such that attorneys’ fees are
recoverable. Thus, in addition to the damages suffered by
Plaintiff, Guaranteed Nursing Staff, L.L.C. has a right to be
reimbursed reasonable attorneys’ fees as permitted by law. 
Although the Court heard no evidence of the reasonableness or
amount of attorneys’ fees incurred by Plaintiff, the Court takes
judicial notice that Plaintiff’s attorneys have expended time and
effort prosecuting this case and that a reasonable fee for the
services is $5,000.00.

Conclusions of Law

1.       The Court finds Plaintiff has non-suited all claims asserted
against HP/Hermann Park., Inc. and are hereby dismissed with
prejudice to re-riling. [sic]

2.       The Court finds that Plaintiff take nothing by its suit against
Defendant Michael Mileski and that Michael Mileski recover his
court costs from Plaintiff.

3.       The Court finds that Plaintiff recover judgment from Defendant
HP Management Service, Inc., on its cause of action for breach of
contract only and shall recover the sum of $16,853.98, together
with post-judgment interest at the annual rate of 6% until paid.

4.       Plaintiff recover prejudgment interest on the judgment at thed
[sic] annual rate of 6% from May 2, 2002 to the date of judgment
in the sum of $3,167.57.

5.       The Court finds Plaintiff recover its attorney fees from HP
Management Service, Inc., in the amount of $5,000. 

6.       The Court finds that all of Plaintiffs court costs be taxed against
Defendant HP Management Service, Inc.
 
7.       The Court finds its judgment is final and disposes of all claims
and all parties and that relief not expressly given is denied and
that the parties are allowed such writs and processes as may be
necessary in the collection or enforcement of this judgment.
 
The trial court awarded GNS $16,853.98 in addition to interest and attorney’s fees.
HP as a Named Defendant
                              In issue one, HP contends that the trial court erred in rendering judgment for
GNS because GNS did not file any pleadings against HP. Specifically, HP alleges
that “there were no pleadings on file with the trial court wherein GNS named [HP]
as a Defendant or asserted any claim against [HP].” HP further argues that “there
were no pleadings in the trial court wherein GNS asserted a breach of contract claim
against [HP].” We disagree. 
                              The appellate record includes a copy of GNS’s third amended petition in which
it names HP as a defendant. Within the petition, GNS alleges that it suffered damages
when the defendants breached the contract by failing to perform the terms of the
contract and failing to pay GNS for services rendered. HP did not specially except
to the third amended petition. In addition, the record contains a Rule 11 Agreement
from HP’s attorney wherein he agreed to accept service on behalf of HP.
                              We overrule issue one.
Breach of Contract
                              In issues two through six, HP asserts that the evidence is legally and factually
insufficient to establish that (1) a contract existed between GNS and HP, (2) HP was
responsible for any contractual obligation incurred by Hermann Park Manor relating
to GNS, and (3) Mileski was acting for or on behalf of HP when he signed the
agreement. In issues seven and eight, HP asserts that there is no evidence to support
an award of damages in this case for breach of contract. The crux of HP’s argument
is that the evidence is legally and factually insufficient to show that Mileski was
acting as an agent of HP and had the authority to bind HP to vendor contracts when
he signed the Supplemental Staffing Agreement. Accordingly, HP argues that the
trial court erred in finding HP liable for breaching the agreement and for the payment
of damages under the court’s conclusions of law three and four. We agree. 
Standard of Review
                              We review de novo a trial court’s conclusions of law and uphold them on
appeal if the judgment can be sustained on any legal theory supported by the
evidence. BMC Software Belgium v. Marchand N.V., 83 S.W.3d 789, 794 (Tex.
2002); In re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). An appellant may not challenge a trial court’s conclusions of law for lack of
factual sufficiency, but we review the legal conclusions drawn from the facts to
determine their correctness. BMC, 83 S.W.3d at 794. If the reviewing court finds
that a conclusion of law is erroneous but that the trial court rendered the proper
judgment, the erroneous conclusion of law does not require reversal. Id. When
performing a de novo review, we exercise our own judgment and redetermine each
legal issue. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998).
                              In this case, the undisputed facts establish that Mileski did not have actual
authority to bind HP to the Supplemental Staffing Agreement as HP’s agent, nor did
HP ratify such conduct on its behalf by Mileski. As reflected on the signature blocks
provided on the Agreement, Mileski signed the Agreement as the “administrator of
Herman Park Manor,” not on behalf of HP. Accordingly, the trial court erred in its
legal conclusions that HP was liable for breach of the contract and for the payment
of damages to GNS. 
Agency Relationship
                              It is undisputed that GNS did not learn that Mileski was an HP employee until
shortly after this suit was filed. An undisclosed principal is liable for the contracts
of its agent only if the agent acted with the principal’s actual authority in making the
contract for the principal or the principal ratified the contract.


 See Latch v. Gratty,
Inc., 107 S.W.3d 543, 546 (Tex. 2003). 
                               Assuming, without deciding, that Mileski was HP’s agent by virtue of his
status as an HP employee, the evidence is legally insufficient to conclude that
Mileski had actual authority from HP to bind it to the Supplemental Staffing
Agreement. “Actual authority” is based on manifestations of consent by the alleged
principal to the alleged agent, and such authority can be conferred either expressly
or by implication. See Intermedics, Inc. v. Grady, 683 S.W.2d 842, 847 (Tex.
App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.). Express authority exists where
the principal has made it clear to the agent that he wants the act under scrutiny to be
done. City of San Antonio v. Aguilar, 670 S.W.2d 681, 683 (Tex. App.—San
Antonio 1984, writ dism’d). Implied authority exists when appearances justify a
finding that the principal authorized the agent’s act; in other words, there is
circumstantial evidence of actual authority. Id. at 683–84. Implied actual authority
exists only as an adjunct to express actual authority, because implied authority is that
which is proper, usual, and necessary to the exercise of the authority that the
principal expressly delegates. Behring Int’l, Inc. v. Greater Houston Bank, 662
S.W.2d 642, 649 (Tex. App.—Houston [1st Dist.] 1983, writ dism’d by agr.);
Employers Cas. Co. v. Winslow, 356 S.W.2d 160, 168 (Tex. Civ. App.—El Paso
1962, writ ref’d n.r.e.).
                                   In this case, there is no evidence of express or implied actual authority for
Mileski to sign the Supplemental Staffing Agreement on behalf of HP and bind HP
to the terms of this contract. Mittleider, the president of HP, testified that Mileski
executed the Supplemental Staffing Agreement on behalf of HCCI, the owner of the
facility, not HP. Furthermore, it is undisputed that HCCI is doing business as
Herman Park Manor and the Agreement expressly bears Mileski’s signature in his
capacity as the administrator of Hermann Park Manor, not as an employee of HP. 
There is also no evidence of what authority Mileski had to bind HP to any contracts
with vendors who did business with Hermann Park Manor, which was owned by
HCCI. It is undisputed that Mileski never entered into any vendor contracts on
behalf of HP while HP managed Hermann Park Manor, and HP never paid any of the
invoices from GNS under the Supplemental Staffing Agreement: only Hermann Park
Manor’s owner, HCCI, paid them. 
                              Nevertheless, GNS argues that because (1) Mileski was an HP employee at the
time he signed the Supplemental Staffing Agreement; (2) GNS was directed to make
its billing inquiries through HP, as administrator of the facility; (3) Mileski made the
decision as to which bills to submit to HCCI, as owner, for payment, and HP
forwarded payments for GNS’s invoices from HCCI to GNS; and (4) HP and HCCI
are located in the same city in Georgia, there is sufficient evidence of actual authority
to bind HP to the Supplemental Staffing Agreement. We disagree. These facts
establish Mileski’s and HP’s status as agents for HCCI under the Long Term Care
Facility Management Agreement. They do not, however, establish that Mileski
signed the Agreement on behalf of HP or that he had authority to bind HP to the
terms of the Agreement, particularly where the Agreement expressly states that he did
so on behalf of Hermann Park Manor, a facility owned by HCCI.
                              Next, GNS argues that Mileski’s apparent breach of the Long Term Care
Facility Agreement by entering into the Supplemental Staffing Agreement, without
HCCI’s permission, for an amount in excess of $10,000 is sufficient evidence to
show implied actual authority to enter into the agreement on behalf of HP. We
disagree. Absent evidence of Mileski’s authority to contract on behalf of HP, or of
whether Mileski ever had express authority or exercised any authority to bind HP,
this evidence cannot establish implied actual authority. See Behring Int’l, Inc., 662
S.W.2d at 649; Employers Cas., 356 S.W.2d at 168 (holding that, for implied
authority to exist, there must be some evidence concerning what authority had been
given to agent).
                              Finally, HP argues that, because Mileski never disclosed to GNS that he was
an employee of HP or that Hermann Park Manor was owned by HCCI, under “an
undisclosed principal theory,” HP is liable for payment due under the Supplemental
Staffing Agreement. GNS’s reliance on the holdings in Posey v. Broughton Farm
Co., 997 S.W.2d 829, 832 (Tex. App.—Eastland 1999, pet. denied) and Hideca
Petroleum Corp. v. Tampimex Oil International, Ltd., 740 S.W.2d 838, 841 (Tex.
App.—Houston [1st Dist.] 2003, no pet.), for this argument is misplaced. These cases
stand for the proposition that, if an agent fails to disclose its principal, the agent is
liable for the contract it enters into with third parties. As noted above, an
undisclosed principal is only liable for the contracts entered into by its agents with
the actual authority of the undisclosed principal or if the undisclosed principal
subsequently ratifies the contract. See Latch, 107 S.W.3d at 546. Here, this was not
the case.Assuming, without deciding, that Mileski was an agent of HP by virtue of his
employment with HP, the evidence is legally insufficient to establish that he had
actual authority to sign the Agreement on behalf of HP or bind HP to the terms of the
Agreement, where he did so expressly on behalf of Hermann Park Manor, owned by
HCCI, but not HP. Accordingly, the evidence is legally insufficient to establish that
(1) a contract existed between GNS and HP, (2) HP was responsible for any
contractual obligation incurred by Hermann Park Manor relating to GNS, and (3)
Mileski acted for or on behalf of HP when he signed the agreement of the facility. 
The trial court thus erred in concluding that HP was liable for breach of the contract
to GNS, and we sustain issues two through six. Because we hold that there is
insufficient evidence of liability for breach of contract, we do not need to reach points
of error seven and eight regarding the trial court’s damage award.
Conclusion
We reverse and render judgment that GNS take nothing from HP.
                                                             
 
                                                                                                           George C. Hanks, Jr.                                                                             Justice
 
Panel consists of Justices Hanks, Bland, and Dorfman.